[No. 21865-8-II.    Division Two.    November 3, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. ANDRE JORDEN, *Appellant*.

*Jeanette M. Dalton*, for appellant (appointed counsel for appeal).

*Russell D. Hauge*, *Prosecuting Attorney*, and *Randall A. Sutton*, *Deputy*; and *Pamela B. Loginsky* (of *Washington Association of Prosecuting Attorneys*), for respondent.

ARMSTRONG, C.J. — Andre Jorden appeals his convictions as an accomplice of first degree premeditated murder and two counts of first degree robbery. RCW 9A.08.020, 9A.32.030(1)(a), 9A.56.200(1). Each conviction carried a firearm enhancement. RCW 9.94A.125, 9.94A.310(3)(a) and (e). Jorden argues that the trial court erred by: (1) imposing consecutive firearm enhancements contrary to *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 254, 955 P.2d 798 (1998); (2) refusing to give a lesser included offense instruction on manslaughter; (3) dismissing a sleeping juror without conducting a hearing or entering findings; (4) denying his motion to dismiss for delay in his preliminary appearance; and (5) admitting a photograph of the murder victim while alive, which also contained other family members. The State concedes the sentencing error. We remand for resentencing; otherwise, we affirm.

## FACTS

Andre Jorden and Raymond Richards robbed a Bremerton Safeway store twice in September 1996. On September 4, Jorden and Richards borrowed Katrina Barthel's car and drove to the Safeway. There, Jorden waited in the car while Richards went inside, took a pack of cigarettes to the cashier, pulled a gun from his waistband, and said "give me all the fucking money." Richards then took the money and walked out of the store. Jorden and Richards returned to Barthel's where they appeared to be on an "adrenaline rush" and were laughing. Jorden, Richards, and Barthel divided the money.

Late the next evening, Jorden and Richards again drove Barthel's car to Safeway. Jorden waited in the car while Richards went inside. Richards had the cashier ring up a pack of cigarettes, then he pulled up his shirt to reveal a

gun and said "I want all your money and I want all the money underneath the till." Returning to Barthel's, the three split the money.

A few days later, Richards and Jorden were driving around with Kemonia McClarron. Richards, who was driving, confided to Jorden that he was going to "beat the shit out of" McClarron because McClarron had pistol-whipped Richards' brother and raped his sister. Richards asked Jorden if he would provide "backup" for the assault; Jorden said he would.

Richards drove to an alley, told the passengers he had a gun in his waistband, and told them he planned to rob a drug dealer. The three men got out of the car. As they walked down the alley, Richards pulled out the gun and shot McClarron four times. Jorden and Richards, laughing, ran back to the car. McClarron died from the gunshot wounds.

Jorden was charged with first degree premeditated murder or, in the alternative, intentional second degree murder or second degree felony murder, and two counts of first degree robbery. He was convicted of first degree premeditated murder and two counts of first degree robbery.

## ANALYSIS

### Dismissal of Juror

On the first day of trial, after the sixth witness, the State moved to disqualify a juror, contending that she was sleeping during trial.[1] Jorden objected and the trial court denied the motion. The judge, however, instructed the bailiff to watch the juror and take notes. The next day, the State renewed its motion and Jorden again objected. The State informed the court that the bailiff had twice given the juror water in an attempt to wake her up. The court noted that

---

[1] The prosecutor stated that she had given a note to the bailiff who then brought the juror a glass of water.

the juror was not "as attentive as the other jurors" but did not excuse her. On the third day of trial, the court moved the juror from the back row to the front row of the jury box. The court instructed the bailiff to tell the juror that the judge was moving her so that she could better see and hear the witnesses.

On the sixth day of trial, the court learned that the juror's mother was in the hospital, possibly in need of life support. During questioning outside the presence of other jurors, the juror said that her mother's health did not prevent her from serving as a juror.[2] Later that day, after the State rested, the court addressed the State's motion to excuse the juror. The court found that RCW 2.36.110,[3] not RCW 4.44.240,[4] governed the issue and allowed the parties to argue and to present witnesses. The State called the bailiff, who testified that the juror was inattentive only on the first day. The State also called the detective who had been seated at counsel table. He testified that the juror appeared to be sleeping in the afternoon of the first day of trial. On other days, the detective saw the juror sitting with her head down

---

[2.]The State again moved to dismiss the juror, noting that she was diabetic, that her husband was fired on the eve of jury selection, that she cried in the courtroom, that she appeared to keep dozing off, and that her family was taking shifts being with her mother in the hospital.

[3] RCW 2.36.110 states:

It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

[4] RCW 4.44.240 states:

Upon the trial of a challenge, the rules of evidence applicable to testimony offered upon the trial of an ordinary issue of fact shall govern. The juror challenged, or any other person otherwise competent may be examined as a witness by either party. If a challenge be determined to be sufficient, or found to be true, as the case may be, it shall be allowed, and the juror to whom it was taken excluded; but if determined or found otherwise, it shall be disallowed.

A plain reading of this statute suggests that it applies to challenges made during the voir dire process, prior to seating and swearing in a jury. *See Ottis v. Stevenson-Carson Sch. Dist. No. 303,* 61 Wn. App. 747, 760, 812 P.2d 133 (1991).

at least once or twice a day. Although the defense did not call any witnesses, Jorden requested a hearing with the juror to determine if she had been inattentive. The court decided not to question the juror. Instead the judge stated his observations of the juror during the testimony of various witnesses: she was yawning, dozing, and sitting with her eyes closed. Concluding that she was "the most inattentive juror I've seen in six and a half years of doing trials," the court excused her.

Jorden argues that the court should have questioned the juror to determine if misconduct had occurred. Further, according to Jorden, the court should have made findings as to whether such misconduct, if any, prejudiced him. According to Jorden, the court erred by excusing the juror without establishing that she had missed important testimony[5] or that her conduct prejudiced either party. Jorden maintains that the juror was the only African-American juror and, thus, differences in her demeanor could have been ethnic in origin.[6]

■■ We review a trial court's decision to excuse a juror for abuse of discretion. *State v. Hughes*, 106 Wn.2d 176, 204, 721 P.2d 902 (1986);[7] *State v. Ashcraft*, 71 Wn. App. 444, 461, 859 P.2d 60 (1993). Under RCW 2.36.110, the judge has a duty "to excuse from further jury service any juror, who *in the opinion of the judge*, has manifested unfitness as a juror by reason of . . . inattention . . . or by reason of conduct or practices incompatible with proper and efficient jury service." (Emphasis added.) CrR 6.5 enables the court to seat alternate jurors when the jury is selected.

---

[5] The trial court, however, documented the juror's stages of inattentiveness, ranging from having her eyes closed to an appearance of dozing. She was inattentive during the testimony of Barthel, the testimony of witnesses to the robberies, the testimony of the detectives, and the testimony of the medical examiner.

[6] Jorden provides no evidence to suggest that the juror's dismissal was the result of racial prejudice or discrimination.

[7] In *Hughes*, the trial court replaced one juror who dozed off with an alternate juror. *Hughes*, 106 Wn.2d at 204.

Further, CrR 6.5 states that: "[i]f at any time before submission of the case to the jury a juror is found unable to perform the duties *the court shall order* the juror discharged." (Emphasis added.) RCW 2.36.110 and CrR 6.5 place a continuous obligation on the trial court to excuse any juror who is unfit and unable to perform the duties of a juror.

■■■ But CrR 6.5 does not explicitly require a hearing even after the case has been given to the jury. *Ashcraft*, 71 Wn. App. at 462. While this court has stated that "CrR 6.5 contemplates a formal proceeding, which *may* include brief voir dire" before substituting a juror, this statement applies where the case has already gone to the jury and the alternates have been temporarily excused. *State v. Johnson*, 90 Wn. App. 54, 72, 950 P.2d 981 (1998); *see also Ashcraft*, 71 Wn. App. at 462. The purpose of a "formal proceeding" is twofold. First, it verifies that the juror is unable to serve. *Johnson*, 90 Wn. App. at 73. Second, it demonstrates that the alternate has remained impartial after being temporarily dismissed. *Ashcraft*, 71 Wn. App. at 462. Here, the trial court heard argument from both parties and allowed both sides to call witnesses. The judge then read his notes about the juror's conduct. The trial court's purpose in not allowing further questioning of the juror was reasonable; it feared that questioning the juror would prejudice her against the State. And no inquiry into the alternate's impartiality was necessary because the case had not yet gone to the jury; hence, the alternates had not been identified or temporarily dismissed.

Citing *United States v. Barrett*, 703 F.2d 1076 (9th Cir. 1983), Jorden argues that the trial court erred in taking judicial notice of a disputed fact, whether the juror was sleeping. *Barrett*, however, is distinguishable. In *Barrett*, after the jury was instructed but before it began deliberating, a juror asked to be removed because he had been sleeping during trial. The judge erroneously thought he did not have the authority to dismiss a juror without the

parties' stipulation. The juror thus remained on the panel and a guilty verdict was returned. Barrett then moved to interview the juror, which the trial court denied, stating "there was no juror asleep during this trial." *Barrett*, 703 F.2d at 1082. The Ninth Circuit Court of Appeals held that "under the particular circumstances of this case, the trial judge could [not] properly take judicial notice of the fact that 'there was no juror asleep during this trial' without making further inquiry into the matter." *Barrett*, 703 F.2d at 1083.

But in *Barrett*, the juror told the court that he had been sleeping and the judge stated his knowledge of the incident only after the verdict was returned. Most importantly, the allegation, if true, prejudiced Barrett's right to a fair trial; he was convicted by a jury that included one member who had not heard all the evidence. Here, the judge made his observations of the juror part of the record and removed her before deliberations began. Further, when given the opportunity to call witnesses, the defense declined to do so. Thus, based on the hearing, there was no dispute that the juror was sleeping. The trial judge simply supplemented the record made by the bailiff and the detective with his own observations of the juror's behavior. Finally, there is no reason to believe that the resulting jury was unfair. Both parties accepted the original jury panel, including the four alternates. And there is no evidence that removing the juror resulted in a tainted or unfair jury.

We also do not fault the trial judge for not questioning the juror. First, the questioning may have been embarrassing to the juror. Second, if the judge had questioned her, the parties presumably would also have been entitled to question her. And this may have put her in an adversarial position with the State. Further, if the juror had denied sleeping, the State may have proposed calling other jurors to report their observations. But this could have put the juror in an adversarial position to the other juror-witnesses. We conclude that the trial judge acted well within his discretion in not calling the juror.

The test is whether the record establishes that the juror engaged in misconduct. We are unwilling to impose on the trial court a mandatory format for establishing such a record. Instead the trial judge has discretion to hear and resolve the misconduct issue in a way that avoids tainting the juror and, thus, avoids creating prejudice against either party.

In doing so, it is also inevitable that the judge will act as both an observer and decision maker. Here, the judge's function was similar to his function in a challenge for cause; i.e., he was a witness and a decision maker. In deciding whether to grant or deny a challenge for cause based on bias, the trial judge has "fact-finding discretion." *Ottis v. Stevenson-Carson Sch. Dist. No. 303*, 61 Wn. App. 747, 753, 812 P.2d 133 (1991); *see also State v. Rupe*, 108 Wn.2d 734, 749, 743 P.2d 210 (1987). This discretion allows the judge to weigh the credibility of the prospective juror based on his or her observations. *Rupe*, 108 Wn.2d at 749; *Ottis*, 61 Wn. App. at 753-54. As with other factual determinations made by the trial court, we defer to the judge's decision. *State v. Noltie*, 116 Wn.2d 831, 839-40, 809 P.2d 190 (1991); *Ottis*, 61 Wn. App. at 755. Here, the judge observed the juror and the other members of the jury throughout the trial and recorded his observations before deciding to excuse her from the jury. Jorden further argues that the trial court failed to determine whether the juror's misconduct prejudiced his right to a fair trial. But because the juror was removed before the jury began deliberations and replaced with an alternate, the issue of prejudice is premature. Jorden has no right to be tried by a jury that includes a particular juror. *State v. Gentry*, 125 Wn.2d 570, 615, 888 P.2d 1105 (1995).

At oral argument, Jorden urged that we should apply a *Batson* analysis to the juror issue. *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). According to Jorden, it was self-evident that race was an issue and, therefore, the dismissal of the only African-American juror was, per se, prejudicial.

*Batson* prevents a party from exercising a peremptory challenge based on race, in violation of a defendant's right to equal protection. *Batson*, 476 U.S. at 89. "In order to contest a peremptory challenge, the defendant must first make out a prima facie case of racial motivation. The burden then shifts to the State to articulate a race-neutral explanation for the exercise of the peremptory challenge." *State v. Luvene*, 127 Wn.2d 690, 699, 903 P.2d 960 (1995).

■ Here, the State did not exercise a peremptory challenge to the juror. Rather, the juror was selected for the jury and was challenged only after the State had started presenting evidence. Thus, *Batson*, which deals with peremptory challenges before the jury is sworn, does not apply. *See State v. Evans*, 100 Wn. App. 757, 998 P.2d 373 (2000); *State v. Vreen*, 99 Wn. App. 662, 994 P.2d 905, *review granted*, 141 Wn.2d 1018 (2000); *Luvene*, 127 Wn.2d 690. More importantly, Jorden has offered no evidence that the State challenged the juror because of her race. Jorden has a right to be tried by an impartial jury, but he has no right to be tried by a particular juror. *Gentry*, 125 Wn.2d at 615.

Overall, as required by RCW 2.36.110, the trial judge excused the juror because he found her fitness as a juror compromised. The court's finding was based on his own observations, corroborated by the testimony of the bailiff and the detective. Moreover, no single incident led to the juror's dismissal, rather it was her conduct over several days. Once the juror was found to be unfit, the trial judge was required under CrR 6.5 to remove her from the jury. Thus, we hold that the trial court did not abuse its discretion in removing the juror.

We affirm but remand for resentencing.

A majority of the court having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SEINFELD and HUNT, JJ., concur.

Reconsideration denied December 20, 2000.

Review denied at 143 Wn.2d 1015 (2001).