
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 68308-0-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EDIBERTO MUJO-HERNANDEZ, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: March 4, 2013 |
| | ) | |

VERELLEN, J. — Ediberto Mujo-Hernandez appeals his conviction for second degree robbery. He argues the trial court erred by dismissing a juror who called in sick the morning of trial. He further contends the court erred by misreading a portion of the accomplice liability instruction to the jury. The trial court properly dismissed the ill juror and swore in the alternative juror along with the 11 other jurors. While the court did misread a small portion of the accomplice liability instruction, any error was harmless beyond a reasonable doubt. The record amply supports his conviction as a principal for second degree robbery—the only crime charged. We affirm Mujo's conviction.[1]

## FACTS

On the evening of June 19, 2011, Aaron Palmer sat down on the steps of Seattle Fitness in Pioneer Square. He pulled out his cell phone to text some friends. Ediberto

---

[1] Mujo considers Mujo, rather than Mujo-Hernandez, to be his last name.

Mujo and a few friends, including Jayro Munoz Monterroso, were driving around the neighborhood. Monterroso said he wanted to go "kick someone."[2] Mujo and Monterroso saw Palmer sitting on the steps of Seattle Fitness and ran up to him. Mujo grabbed Palmer's hood and dragged him down the stairs. Monterroso kicked Palmer, and Mujo grabbed Palmer's cell phone from Palmer's hands. Mujo and Monterroso then ran back to their car and drove away. A security camera from Seattle Fitness captured the incident, although the footage does not show Mujo taking the cell phone from Palmer.

The State charged Mujo with one count of second degree robbery. The court instructed the jury on the lesser-included offenses of assault in the fourth degree and theft in the third degree. The jury found Mujo guilty of second degree robbery, and the court imposed a standard range sentence.

## DISCUSSION

### Juror Dismissal

Mujo first challenges the court's decision to dismiss juror 13, arguing the court was obliged to inquire into the juror's ability to serve, and contending the dismissal deprived Mujo of his right to a trial by jury. We review a trial court's decision to excuse a juror for abuse of discretion.[3]

The morning after the jury had been selected, but before the jury had been sworn, juror 13 left a phone message that she was ill. The trial court proposed going

---

[2] Report of Proceedings (RP) (Jan. 10, 2012) at 101.

[3] State v. Elmore, 155 Wn.2d 758, 768, 781, 123 P.3d 72 (2005); State v. Jorden, 103 Wn. App. 221, 226, 11 P.3d 866 (2000).

2

forward with the remaining 11 jurors plus the alternate. Mujo's counsel objected, noting that juror 13 is African American and Mujo is a person of color. Defense counsel suggested setting the one day trial over for one day, presumably to see if juror 13 had recovered. The trial court declined delaying the trial and the trial proceeded with 12 jurors.

RCW 2.36.110 sets forth the circumstances under which a court must excuse a juror:

> It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of . . . any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

CrR 6.5 governs the procedure a trial court must follow if a juror is found unable to perform his or her duties. If the juror is found unable to perform before submission of the case to the jury, "the court *shall* order the juror discharged, and the clerk shall draw the name of an alternate who shall take the juror's place on the jury."[4]

In State v. Jorden, we upheld the court's decision to dismiss a juror who, over the course of several days, yawned, dozed, and sat with her eyes closed during the testimony of various witnesses.[5] We reasoned the court properly exercised its discretion

---

[4] CrR 6.5 (emphasis added). The same rule provides a different procedure in the event a juror is unable to perform his or her duties after deliberations commence. See, e.g., State v. Ashcraft, 71 Wn. App. 444, 467, 859 P.2d 60 (1993) (holding the trial court erred by failing to reinstruct the reconstituted jury that it must disregard previous deliberations with dismissed juror and begin deliberations anew). This procedure is inapplicable here, where the court dismissed juror 13 the morning of trial, before the court had sworn in the jury.

[5] 103 Wn. App. 221, 226, 230, 11 P.3d 866 (2000).

to dismiss the inattentive juror because "[o]nce the juror was found to be unfit, the trial judge was required under CrR 6.5 to remove her from the jury."[6]

Mujo does not establish the trial court abused its discretion by accepting the phone call at face value. Juror 13 was, by virtue of illness, unfit to serve. Having determined the juror's inability to serve, the trial court made the logical decision to proceed with the 12 jurors who were present on the morning trial was to begin— precisely the procedure mandated by CrR 6.5. Further, the dismissal of juror 13 was less disruptive than in Jorden, where the court had to dismiss the juror during trial.

The trial court determined that a one day delay for a one day trial was "fraught with problems," particularly with a long weekend approaching.[7] The court's concern was consistent with the statutory directive that a court consider juror dismissal with an eye to "proper and *efficient*" jury service.[8]

We reject, as we did in Jorden, the contention that dismissal of a juror before deliberation prejudices the defendant's right to a fair trial.[9] As in Jorden, the court here dismissed the juror before the jury began deliberating, so "the issue of prejudice is premature."[10] A defendant does not have a right to be tried by a jury that includes any particular juror.[11]

---

[6] Id. at 230.

[7] RP (Jan. 10. 2012) at 33.

[8] RCW 2.36.110 (emphasis added).

[9] Jorden, 103 Wn. App. at 229.

[10] Id.

[11] State v. Gentry, 125 Wn.2d 570, 615, 888 P.2d 1105 (1995).

Nor are we persuaded by Mujo's contention that the court's dismissal of juror 13, who is African American, requires a Batson analysis.[12] "Batson prevents a party from exercising a peremptory challenge based on race, in violation of a defendant's right to equal protection."[13] The State did not exercise a peremptory challenge to juror 13. Juror 13 called in sick.

*Jury Instructions*

Mujo also asserts that an error in the court's recitation of the accomplice liability instruction relieved the State of its burden of proof.[14] Mujo acknowledges that the written accomplice liability instruction correctly stated the law. The pertinent portion of the written instruction stated:

> A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
>
> (1)  solicits, commands, encourages, or requests another person to commit the crime; or
>
> (2)  aids or agrees to aid another person in planning or committing the crime.[15]

---

[12] Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

[13] Jorden, 103 Wn. App. at 230 (rejecting the identical argument) (citing Batson, 476 U.S. at 89).

[14] The State contends Mujo waived his right to raise this issue on appeal by failing to object to the instruction at trial. We address Mujo's argument, as a defendant may raise for the first time on appeal a "manifest error affecting a constitutional right." RAP 2.5(a)(3). "An error is 'manifest' if the defendant demonstrates that it had practical and identifiable consequences in the trial." State v. King, 113 Wn. App. 243, 265 n.2, 54 P.3d 1218 (2002). Instructional error that may be construed as relieving the State of the burden of proving an element of its case is manifest and of constitutional magnitude. Id.

[15] Clerk's Papers at 46.

However, Mujo contends the trial court's error in its recitation of the instruction to the jury allowed the jury to find him guilty as an accomplice if he had knowledge of *any* crime committed by the principal, rather than knowledge of *the* charged crime. In verbally instructing the jury, the court misread the definite article "the" as the indefinite article "a" in two instances:

> A person is an accomplice in the commission of a crime if[,] with knowledge that it will promote or facilitate the commission of <u>a</u> crime[,] he or she either, one, solicits, commands, encourages, or requests another person to commit <u>a</u> crime, the crime; or, two, aids or agrees to aid another person in planning or committing the crime.[16]

The error in the court's recitation of the instruction is harmless only if we can "'conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.'"[17]

In cases where a defendant alleges error in the accomplice liability instruction, the harmless error inquiry is "inextricably interwoven" with the facts of the particular case.[18] If the record contains evidence that a defendant acted as a principal, *i.e.*, through direct participation in the charged crime, "the difference between 'a crime' and 'the crime' in the accomplice instruction is harmless beyond a reasonable doubt."[19]

In <u>State v. Brown</u>, Brown challenged an error in the accomplice liability instruction where he had been convicted for first degree robbery, first degree assault,

---

[16] RP (Jan. 12, 2012) at 159 (emphasis added).

[17] <u>State v. Brown</u>, 147 Wn.2d 330, 341, 58 P.3d 889 (2002) (quoting <u>Neder v. United States</u>, 527 U.S. 1, 19, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)).

[18] <u>King</u>, 113 Wn. App. at 266; <u>see also</u> <u>Brown</u>, 147 Wn.2d at 341 (applying the harmless error analysis requires a thorough examination of the record as to each defendant).

[19] <u>Brown</u>, 147 Wn.2d at 341.

and first degree rape.[20] The court noted, "[T]he record shows that Jacob Brown struck the victim, took his personal property, and held him at gunpoint."[21] Because Brown acted as a principal in the robbery, the instructional error was harmless beyond a reasonable doubt.[22] Conversely, the instructional error was not harmless beyond a reasonable doubt with respect to the rape and assault charges, as there was no evidence of Brown's "direct participation . . . as a principal."[23]

The record reflects Mujo's direct participation in each of the elements of robbery.[24] Mujo admitted to being the suspect in the surveillance video footage who pulled the sweatshirt over Palmer's head, and admitted that he grabbed the cell phone from Palmer's hand and drove away. Palmer testified he had not given anyone else permission to have or use the phone.

Mujo contends the error was not harmless, as the State asked the jury to consider lesser-included offenses, including the possibility that Mujo aided Monterroso in assaulting Palmer. Monterroso had stated to Mujo before they saw Palmer that Monterroso wanted to go kick someone, so Mujo could have been acting as Monterroso's accomplice in an assault. But Mujo's argument ignores the compelling

---

[20] 147 Wn.2d 330, 341, 58 P.3d 889 (2002).

[21] Id.

[22] Id.

[23] Id.

[24] RCW 9A.56.190 (defining the crime of robbery). "A person is guilty of robbery in the second degree if he or she commits robbery." RCW 9A.56.210(1).

evidence in the record of his direct participation in all elements of the only crime charged—second degree robbery.[25]

Notwithstanding the compelling evidence of Mujo's participation as a principal in second degree robbery, there is also ample evidence of his direct participation in the lesser-included offenses. Mujo grabbed Palmer's hood and pulled him down the stairs, acting as a principal in the lesser-included offense of assault in the fourth degree.[26] Mujo took Palmer's phone from his hand, acting as a principal in the lesser-included offense of theft in the third degree.[27] Under Brown, the error was harmless.

Affirmed.

WE CONCUR:

---

[25] Mujo's reliance on State v. Sanchez, 122 Wn. App. 579, 94 P.3d 384 (2004), is similarly unpersuasive. There, the court failed to read the entire assault definition, which relieved the State of its burden of proving every essential element of the crime beyond a reasonable doubt. Id. at 589-90.

[26] RCW 9A.36.041(1) ("A person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another.").

[27] RCW 9A.56.050(1)(a) ("A person is guilty of theft in the third degree if he or she commits theft of property or services which (a) does not exceed seven hundred fifty dollars in value.").

8