FILED
COURT OF APPEALS
DIVISION II

2015 APR 14 AM 9: 51

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>   v.<br><br>WILLIAM ALEXANDER MANUS,<br><br>               Appellant. | No. 45532-3-II<br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, J. — A jury returned a verdict finding William Manus guilty of failure to register as a sex offender. Manus appeals his conviction, asserting that (1) the trial court violated his public trial right by employing a procedure by which the State and defense counsel exercised peremptory challenges in writing, and (2) the trial court erred by failing to excuse a juror for cause after the juror told the trial court that he had recognized a State's witness as someone the juror knew from his gym. We affirm Manus's conviction.

## FACTS

On October 21, 2013, the State charged Manus with failure to register as a sex offender. Before the start of jury selection, the trial court told counsel that challenges for cause should be brought to its attention at sidebar and that peremptory challenges would be done in writing. After the trial court and counsel questioned potential jurors at voir dire, the trial court stated that the attorneys would be "doing their final selection here in writing." Report of Proceedings (RP) (Oct. 21, 2013) (Jury Voir Dire) at 66. The trial transcripts then state, "(Attorneys doing their peremptory challenges)" followed by "(Sidebar held, but not reported)." RP (Jury Voir Dire) at

No. 45532-3-II

The trial court swore in the selected jurors. After the jury was excused from the courtroom, the following discussion took place:

> [Trial court]: I just want to make a quick record regarding our discussion at sidebar regarding excusing jurors for cause. It was agreed to excuse Juror No. 6 and 29. It's also agreed to excuse Juror No. 23 because of a scheduling issue, and also we agreed to excuse Juror No. 19 due to some health issues that she had indicated on her green form that she had that would hurt her ability to be a juror.
> Counsel, do you wish to supplement the record at all regarding those?
> [State]: No, Your Honor. Each of those issues was brought to our attention and the state had no objection to excusing those individual jurors for cause.
> [Defense counsel]: Neither did the defense, Your Honor. Thank you.

RP at 30. That same day, the sheet of paper showing the attorneys' written peremptory challenges was filed with the court and made part of the trial record. This sheet shows that the State and defense counsel each exercised seven peremptory challenges by writing the names and numbers of potential jurors they wanted excused from the jury.

Toward the end of trial, the trial court told counsel that there was a potential issue with a juror that had recognized one of the State's witnesses, Tacoma Police Officer Tyler Meeds, stating:

> All right. So we have an issue with one juror, Juror No. 11. Last night after we excused them, he indicated to [a judicial assistant] that he knows Officer Meeds from where they work out together. He didn't know him by name, but he recognized him when he testified.

RP at 263. The trial court and counsel then questioned Juror No. 11 about his disclosure:

> [Trial court]: . . . My Judicial Assistant . . . brought it to my attention yesterday afternoon after we broke that you recognized Officer Meeds from the place that you work out?
> [Juror]: Yes.
> [Trial court]: Is he somebody that you're a social acquaintance with? Or explain to me how you know him.

2

No. 45532-3-II

[Juror]: I think I met him maybe five years ago, and our relationship is not like a friend type of relationship. It's just, you know, when I see him, we talk about sports. I was interested in home protection, and he spoke to me about that. So that's really about it. We see each other. We do talk on occasion. So I just wanted to let you guys know that I did recognize him.

[Trial court]: You haven't talked to him obviously about this particular case?

[Juror]: No, I have not.

[Trial court]: Any reason why your knowledge of him or your relationship with him would affect your ability to be a fair juror in this case?

[Juror]: No, it would not.

[Trial court]: Does the state have any questions?

[State]: I guess I would ask that when you see him, is it primarily at the gym?

[Juror]: Yes.

[State]: So you don't get together with him outside the gym?

[Juror]: No, I do not.

[State]: These conversations that you have, generally you have them in the gym when you guys are working out?

[Juror]: Exactly.

[State]: I don't have any further questions. Thank you.

[Trial court]: [Defense counsel], any questions?

[Defense counsel]: No questions, Your Honor.

RP at 264-65. Defense counsel requested the trial court to excuse the juror, which request the trial court denied, stating:

I don't think that there is a degree of potential prejudice with this juror that would cause him to be excused for cause. He didn't even know the officer's name. I don't think that that's the kind of affinity with a witness and a juror that would justify excusing him at this point in the trial. So I'll not excuse him. I think he can maintain an open mind and participate and make his decision based on the facts presented and on the law given to him.

I also agree with the state somewhat that the arrest of Mr. Manus was based upon an outstanding warrant. It wasn't based upon the allegations of failure to register, and the officer's testimony only was at the very end of this case. It didn't have anything to do with, I guess, the underlying significant issues in the case.

RP at 268-69. The jury returned a verdict finding Manus guilty of failure to register as a sex offender. Manus appeals his conviction.

3

ANALYSIS

## I. PUBLIC TRIAL RIGHT

Manus first contends that the trial court violated his public trial right by directing the State and defense counsel to exercise their peremptory challenges in writing without first considering the factors set forth in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995). We recently rejected this same contention in *State v. Marks*, 184 Wn. App. 782, 339 P.3d 196 (2014). Following *Marks*, we hold that Manus's public trial right was not violated by the trial court's procedure directing counsel to exercise their peremptory challenges in writing.

## II. DENIAL OF FOR CAUSE CHALLENGE

Next, Manus contends that the trial court erred when it refused to dismiss a juror for cause after the juror told the trial court that he had recognized Officer Meeds as someone he knew from his gym. We disagree.

We review a trial court's decision whether to remove a juror for cause for an abuse of discretion. *State v. Elmore*, 155 Wn.2d 758, 768, 123 P.3d 72 (2005). A trial court abuses its discretion when it bases its decision on untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to trial by an impartial jury. *State v. Gonzales*, 111 Wn. App. 276, 277, 45 P.3d 205 (2002). Additionally, RCW 2.36.110 provides:

> It shall be the duty of a judge to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness as a juror by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

And CrR 6.5 states, "If at any time before submission of the case to the jury a juror is found unable to perform the duties the court shall order the juror discharged." RCW 2.36.110 and CrR 6.5 impose on the trial court a continuing obligation to excuse any juror who is unfit to serve on the jury. *State v. Jorden*, 103 Wn. App. 221, 227, 11 P.3d 866 (2000). The key inquiry for the trial court in deciding whether to excuse a juror for cause is "whether the challenged juror can set aside preconceived ideas and try the case fairly and impartially." *Hough v. Stockbridge*, 152 Wn. App. 328, 341, 216 P.3d 1077 (2009). Because the trial court is able to observe the challenged juror, it is in the best position to evaluate a juror's candor, and it may weigh the credibility of the juror based on its observations. *Elmore*, 155 Wn.2d at 769 n. 3; *Jorden*, 103 Wn. App. at 229. Thus, absent a manifest abuse of its discretion, we defer to the trial court's judgment as to whether a juror should be excused for cause. *State v. Noltie*, 116 Wn.2d 831, 839-40, 809 P.2d 190 (1991).

Manus argues that the juror's prior relationship with Meeds demonstrated an actual bias and an implied bias that rendered the juror unfit to serve on the jury. We disagree.

A.    *Actual Bias*

"Actual bias" is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2); CrR 6.4(c)(2). A party challenging a juror for actual bias has the burden of demonstrating such bias by a preponderance of the evidence. *Ottis v. Stevenson-Carson School Dist. No. 303*, 61 Wn. App. 747, 754, 812 P.2d 133 (1991). It is not sufficient that a party show

that the challenged juror "has formed or expressed an opinion upon what he or she may have heard or read," rather, "to sustain the challenge . . . the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially." RCW 4.44.190; CrR 6.4(c)(2).

Manus does not cite any evidence in the record sufficient to prove actual bias justifying dismissal of the challenged juror. Instead Manus merely speculates that, because the challenged juror had known Meeds as an acquaintance at a shared gym for five years and had engaged in casual conversation with Meeds during that time, the juror "would naturally have felt additional pressure to supporting [sic] his friend from the gym and find Manus guilty." Br. of Appellant at 20. But, even if this speculative assertion was competent evidence of actual bias, the challenged juror told the trial court that his prior relationship with Meeds would not affect his "ability to be a fair juror in this case." RP at 264. The trial court found the juror to be credible in this regard, concluding that the juror could "maintain an open mind and participate and make his decision based on the facts presented and on the law given to him." RP at 268. We defer to the trial court's credibility determination, and we hold that Manus has failed to show that the trial court abused its discretion by failing to dismiss the juror for actual bias.

B.     *Implied Bias*

Manus similarly fails to show that the trial court abused its discretion by failing to dismiss the challenged juror for implied bias. RCW 4.44.180 provides four bases by which a

juror may be challenged for an implied bias.[1] Manus admits that the challenged juror's

relationship with Meeds does not fall within "one of the listed statutory bases for implied bias,"

but argues that we should interpret RCW 4.44.180 broadly under the rule of lenity. Br. of

Appellant at 20. However, Manus fails to provide any argument as to how the juror's prior

relationship with Meeds would fall within RCW 4.44.180 even under a broad interpretation of

the statute. Accordingly, we do not further consider Manus's claim that the trial court erred by

failing to dismiss the challenged juror under RCW 4.44.180. *See State v. Davis*, 174 Wn. App.

623, 641, 300 P.3d 465, *review denied*, 178 Wn.2d 1012 (2013) ("Passing treatment of an issue

is insufficient to warrant appellate consideration.").

Although we decline to address Manus's claim under RCW 4.44.180 for lack of adequate

argument, we must still address whether the trial court abused its discretion by failing to excuse

the challenged juror for implied bias under RCW 2.36.110 and CrR 6.5. *Jorden*, 103 Wn. App.

---

[1] RCW 4.44.180 states:

A challenge for implied bias may be taken for any or all of the following causes, *and not otherwise*:

(1) Consanguinity or affinity within the fourth degree to either party.

(2) Standing in the relation of guardian and ward, attorney and client, master and servant or landlord and tenant, to a party; or being a member of the family of, or a partner in business with, or in the employment for wages, of a party, or being surety or bail in the action called for trial, or otherwise, for a party.

(3) Having served as a juror on a previous trial in the same action, or in another action between the same parties for the same cause of action, or in a criminal action by the state against either party, upon substantially the same facts or transaction.

(4) Interest on the part of the juror in the event of the action, or the principal question involved therein, excepting always, the interest of the juror as a member or citizen of the county or municipal corporation.

(Emphasis added).

No. 45532-3-II

at 227; *State v. Boiko*, 138 Wn. App. 256, 265, 156 P.3d 934 (2007). But Manus's implied bias claim under RCW 2.36.110 and CrR 6.5 suffers from the same infirmity as his actual bias claim in that the trial court found credible the challenged juror's statement that his prior relationship with Meeds would not affect his "ability to be a fair juror in this case." RP at 264. Again, we defer to the trial court's credibility determination in this regard and thus hold that Manus fails to show that the trial court abused its discretion by declining to dismiss the challenged juror based on an implied bias. Accordingly, we affirm Manus's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Johanson, C.J.

_____
Melnick, J.

8