IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  36971-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| GARY ELTON SARGENT, JR, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Gary Sargent challenges his conviction for robbery on the ground that the trial court erroneously excused a juror for cause.  We hold that the trial court did not abuse its discretion when dismissing the juror and affirm the conviction.

## FACTS

Gary Sargent, Jr. stole property from Adam Ball.  In the course of the theft, Sargent menaced Ball with a wooden stick.

## PROCEDURE

The State of Washington charged Gary Sargent with robbery in the first degree. The State alleged that the wooden stick constituted a deadly weapon for purposes of the crime.

At the commencement of jury selection, the careful trial judge notified the parties that juror 27 spoke negatively about the judge to the court bailiff. Juror 27 informed the bailiff that "she can't be on a trial" with the judge presiding. Report of Proceedings (RP) at 30. The judge added:

> I have no idea who she [juror 27] is, how she knows me, whether she was a litigant in a case, or whether she was peripherally associated with a case that I was the judge on. She may be outspoken—I don't know—based on her demeanor as [the bailiff] described it to me. But, again, I don't know who she is.

RP at 30. Neither party then expressed concern about allowing juror 27 to remain part of the venire.

After voir dire, both parties exercised five of their seven allotted peremptory challenges. As a result, juror 27 sat as the twelfth juror on a panel of thirteen, which included an undesignated alternate juror to be selected randomly before jury deliberations. The trial court swore in the jurors, delivered preliminary instructions, and released the panel for a lunch break.

Before the parties and the court adjourned for lunch, the cautious trial judge reminded the parties that juror 27 had not been questioned by either party about her animosity toward the judge. The trial judge advised the parties that, as juror 27 exited the courtroom for lunch, she, with an angry look, peered at the judge and mouthed words to the effect: "I can't believe I'm having to do this." RP at 148 (italics omitted). The trial

2

judge inquired of the parties' wishes as to whether the court should excuse juror 27 from the jury.

The prosecuting attorney also noticed, as the jury broke for the noon recess, juror 27's facial animosity, but the attorney did not see the juror mouth anything. Defense counsel urged the court to question juror 27 before excusing her outright. The trial court agreed to question the juror after the noon recess.

Before questioning juror 27 that afternoon, the State informed the trial court that juror 27 had interacted with a staff member of the prosecutor's office during the lunch break:

> [THE STATE]: Bratlie [juror 27]. Sorry. I don't have the list in front of me. Ms. Bratlie contacted Christian [sic] in our office and expressed her dismay at being selected on a jury and basically said she didn't want to be there. I wasn't present for this conversation—
> THE COURT: Uh-huh.
> [THE STATE]:—but one of the staff members—she came up to one of the staff members. And apparently they noted that—I don't know the exact words, but she was not—she was not happy—
> THE COURT: Okay.
> [THE STATE]:—and expressed as much.

RP at 161.

The trial court, with the parties present, questioned juror 27 outside the presence of the jury.

> THE COURT: . . . So we brought you in—I'll just do a little background. We were made aware this morning that you had expressed to Mr. [Bailiff] that you didn't want to be on a trial where I was the judge. I disclosed that to the attorneys before we started questioning, but nobody

3

asked you about it.  And I thought perhaps you realized that this case isn't about me as the judge, it's about Mr. Sargent and about these attorneys trying the case and about the jury deciding it.  But it became evident once you were selected that you were pretty unhappy about being here.

I want to make sure or find out that you're unhappiness with me, can you set that aside and be fair to the parties in this case?  Because this is, of course, very important to Mr. Sargent and to the State.

JUROR CARRIE BRATLIE: I probably understand that better than anybody else

THE COURT: Okay.

JUROR CARRIE BRATLIE:—in this room.  I sat through, we'll call it, a trial.  Okay?  I don't know if you even remember it.

THE COURT: I don't.  I've racked my brain trying to remember.

JUROR CARRIE BRATLIE: Harrison/Peterson, Caden Peterson, my nephew, who I have not seen for over a year because you gave Angela Peterson the trust, the Peterson trust.

THE COURT: Oh, okay.  All right.  Okay.  Yeah.  Okay.

JUROR CARRIE BRATLIE: I am absolutely tingling in anger.

THE COURT: Okay.

JUROR CARRIE BRATLIE: Your bias that you bring to this courtroom is beyond irresponsible.  And what I witnessed in your bias, I understand what this gentleman is going through.  I do.  The bias, again, that you brought, that you felt without looking at all the details, you can never get me to believe that you read both sides of that case before.

Potentially after, you did, when you realized that Angela Harrison was lying to you.  But the damage had been done at that point.  I don't care about the money.  I honestly don't care about the property that I live in.  What I care about is the relationship that I once had with my nephew that I no longer have.

Your bias is what did that, your bias in that all women are correct.  I thank God there's no—there's no woman in here.  This is a straightforward case.  It's all men.  You can't possibly have a bias.

RP at 162-65.

Both parties declined the astute trial judge's invitation to also question juror 27.

The trial judge then asked juror 27 whether her animosity toward the judge would distract

No. 36971-4-III
*State v. Sargent Jr.*

her from focusing on the testimony and give both sides a fair trial. Juror 27 responded: "Because I've seen your work in this courtroom, I will be watching you." RP at 166. The prosecuting attorney asked a follow-up question in the form of a statement: "it sounds like you'd just be focused on the judge rather than maybe the evidence that's coming in." RP at 166. Juror 27 replied: "Yes. Because the bias that I saw in dealing with the attorneys, I would be wondering if she was giving you benefit that she wasn't giving to the other counsel." RP at 167. Defense counsel declined to question juror 27, and the trial judge excused juror 27 to return to the jury room.

The State moved to dismiss juror 27 due to the juror's concession that she would not listen to the evidence. RP 167. Defense counsel replied: "I think at this point we picked thirteen jurors. I think we should stick with the thirteen jurors." RP at 168. The trial court granted the prosecutor's request and dismissed juror 27:

> THE COURT: Okay. I am going to excuse Ms. Bratlie. I'm sorry to do so since we haven't even started the presentation of the evidence. As I understood and heard her answers to the questions, she would not be focusing on the presentation of the evidence.
> I'm concerned also, reading between the lines, that, although she said, *thankfully it's all men; there's no women*, that she somehow suggested that I might favor [the prosecutor] over [defense counsel]. And I'm worried about her being fair to both sides in listening to this case and making a decision.
> I'm also quite frankly a little bit concerned about her possibly bringing in extraneous information to the discussions among the jurors in terms of going off on a thing about, you know, Judge Allan and bias and whatnot. And I'm concerned about that might somehow taint the deliberation process and take the focus away from where it should be and the evidence in this particular case.

5

No. 36971-4-III
*State v. Sargent Jr.*

RP at 168.

The trial court dismissed no other juror during the course of the trial, such that the absence of juror 27 did not reduce the panel below twelve members. The jury convicted Gary Sargent as charged.

LAW AND ANALYSIS

Dismissal of Juror 27

On appeal, Gary Sargent asserts that the trial court abused its discretion when dismissing juror 27. Sargent argues that no ground existed to remove the juror under RCW 2.36.110 because the trial court did not find juror 27 to be "unable to perform the duties" of a juror, nor did the court find the juror manifested bias, prejudice, indifference or inattention. Sargent claims the trial court speculated that juror 27 might be inattentive to the presentation of evidence, that the juror might not be fair to both sides, and that the juror might insert extraneous information into jury deliberations. The State responds that the record amply supports juror 27's lack of attentiveness, a sufficient ground for removal. Based on juror 27's answers to questioning, we agree with the State.

We review a trial court's decision to discharge a juror for abuse of discretion. *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 806, 425 P.3d 807 (2018). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds. *State v. Sassen Van Elsloo*, 191 Wn.2d at 807.

6

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to a fair trial "by an impartial jury." U.S. CONST. amend. VI; WASH. CONST. art. I, § 22.  RCW 2.36.110 and CrR 6.5 generally govern dismissal of a juror.  *State v. Sassen Van Elsloo*, 191 Wn.2d at 807. RCW 2.36.110 provides:

> It shall be the duty of a judge to excuse from further jury service any juror, who *in the opinion of the judge*, has manifested unfitness as a juror by reason of bias, prejudice, *indifference, inattention* or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service.

(Emphasis added.)  CrR 6.5 states that: "[i]f at any time before submission of the case to the jury a juror is found unable to perform the duties the court shall order the juror discharged."

CrR 6.5 and RCW 2.36.110 place a continuous obligation on the trial court to excuse any juror who is unfit and unable to perform the duties of a juror.  *State v. Jorden*, 103 Wn. App. 221, 227, 11 P.3d 866 (2000).  Both RCW 2.36.110 and CrR 6.4(c)(1) create a mandatory duty to dismiss an unfit juror even in the absence of a challenge. *State v. Lawler*, 194 Wn. App. 275, 284, 374 P.3d 278 (2016).  When determining whether the circumstances establish that a juror engaged in misconduct, the trial court need not follow any specific format.  *State v. Jorden*, 103 Wn. App. at 229.

In *State v. Jorden*, this court found that the trial court did not abuse its discretion when removing a juror on the ground of inattentiveness during trial.  The record showed

7

that no single incident led to the juror's discharge and that the trial court "documented the juror's stages of inattentiveness, ranging from having her eyes closed to an appearance of dozing." *State v. Jorden*, 103 Wn. App. at 226 n.5.

*State v. Jorden* is factually different because the trial court excused the juror during the middle of the trial after the juror appeared to sleep. Gary Sargent's trial judge dismissed juror 27 before the commencement of opening statements. We deem this difference unimportant. Sargent's trial judge need not have observed juror 27's potential inattentiveness when the juror admitted she would focus on the judge's conduct rather than the evidence presented.

A foreign case of import is *State v. Sanders*, 92 Ohio St. 3d 245, 750 N.E.2d 90 (2001), a capital murder prosecution. The trial court excused for cause a venireperson, who stated during questioning that she frequently needed to smoke a cigarette. The appeals court rejected the accused's claimed error in excusing the venirewoman. The trial court did not abuse its discretion when predicting that the juror would be inattentive during trial and bring an attitude less than judicious to deliberations.

We also note that the trial court worried about juror 27's favoring the prosecution over defense counsel and the juror's introducing irrelevant information to jury deliberations. These additional factors constitute bias and "conduct or practices incompatible with proper and efficient jury service." RCW 2.36.110.

8

Statement of Additional Grounds

In a statement of additional grounds (SAG), Gary Sargent contends his counsel performed ineffectively. Sargent takes issue with the following portion of his defense counsel's closing argument:

> So based on what you've heard, based on the lack of evidence, what this gentleman did was commit the crime of theft. But that's not what the State charged. They charged Robbery in the First Degree which is I guess I call it theft plus because it's taking something with all those other elements.

RP at 364. Sargent claims that he never testified to committing theft. Sargent picturesquely argues his counsel "did everything exspet [sic] write Guilty on the verdict hisself [sic]." SAG at 2.

To demonstrate ineffective assistance of counsel, a defendant must make two showings. First, the defendant must establish that defense counsel's representation was deficient in that the performance fell below an objective standard of reasonableness based on consideration of all circumstances. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Second, a defendant must show that defense counsel's representation prejudiced the defendant. This second showing entails establishing a reasonable probability that, except for counsel's errors, the result of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). A reviewing court need not consider both prongs of the ineffective assistance analysis if a defendant fails on one. *In re Personal Restraint of Crace*, 174 Wn.2d 835, 847, 280 P.3d 1102 (2012). We apply

9

a strong presumption of effective representation of counsel, and the defendant has the burden to show that, based on the record, there are no legitimate strategic or tactical reasons for the challenged conduct. *State v. McFarland,* 127 Wn.2d at 335-36.

Gary Sargent cannot show that his defense counsel performed deficiently for arguing that Sargent committed the lesser offense of theft rather than a robbery. Contrary to Sargent's assertion, he did admit on direct and on cross-examination that he took Adam Ball's backpack from the park and acknowledged that the backpack was not his. Instead of arguing that Sargent never took Ball's backpack, Sargent's defense counsel attacked the credibility of Ball's story and argued that the State failed to prove Sargent took the backpack while armed with a deadly weapon. The lack of the presence of a deadly weapon would mean that the State failed to prove an element of first degree robbery. Thus, defense counsel employed a legitimate strategy. Accordingly, Sargent's ineffective assistance claim fails.

Gary Sargent also contends he was denied a fair trial. Because he does not identify any manner in which he did not receive a fair trial other than his counsel's performance or the trial court's removal of juror 27, we reject this additional contention.

CONCLUSION

We affirm Gary Sargent's conviction for robbery in the first degree.

10

No. 36971-4-III
*State v. Sargent Jr.*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, C.J.

11