**FILED**
**MARCH 28, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38810-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RICHARD CARL HOWARD II, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. —Richard Howard appeals his conviction for violation of a no-contact

order, arguing the trial court erred by constructively discharging a sleeping juror from the

petit jury. We affirm.

## BACKGROUND

Mr. Howard's appeal is based solely on events that happened during trial.

The facts leading to his arrest and prosecution are not relevant to our analysis.

Of particular significance to this appeal is a juror, who we identify as "Juror B."

Mr. Howard was charged with one count of residential burglary, one count of

obstructing a law enforcement officer, and one count of violating a no-contact order.

He exercised his right to a jury trial.

During voir dire, the prosecutor disclosed a potential connection to Juror B.

The prosecutor explained that Juror B's stepmother had occasionally testified for the State

as an expert witness in other cases. The court questioned Juror B about this connection

and he reported no difficulties with impartiality.

Before the close of voir dire, Mr. Howard moved to strike the entire venire based

on inadequate racial diversity. The court denied the motion.

After both sides finished questioning the venire, defense counsel moved to strike

Juror B for cause. Counsel explained his justification:

> I appreciate [the prosecutor] bringing . . . up . . . the close relative that
> testifies as a DV [domestic violence] expert . . . .
> One of my other concerns *actually more so than that* is I noticed a
> number of times [Juror B] appeared to be sleeping during the voir dire.
> He'd have his eyes shut. I thought he was actually taking a nap at some
> point, and I have concerns about his ability to pay attention.

Rep. of Proc. (RP) (Mar. 8, 2022) at 118 (emphasis added).

The State objected to the strike, explaining it would make the jury less racially

diverse because Juror B was one of the few people of color in the venire. The trial court

denied the challenge, explaining:

> I did watch [Juror B]. I did notice him close his eyes once or twice, but
> I kind of watched him a little bit. He didn't appear to be sleeping to me.
> I'm trying to watch all 33 of them at the same time, but at this point,
> there's not enough to strike him for cause.

*Id.* at 120.

Defense counsel did not use a peremptory strike against Juror B and Juror B

was seated on the petit jury as juror 1. The court seated 14 jurors, noting outside the

jury's presence that jurors 13 and 14 would be excused if their service was not needed.

The judge later explained it is not their practice to let the jury know the identity of the

alternates at the outset, to ensure everyone pays attention.

During the State's closing argument, the trial court interrupted, apparently

concerned about Juror B:

> THE COURT: Can you nudge him just a little bit? It's all right.
> I wanted to make sure you're okay.
> JUROR [B]: Yeah, I'm good.

RP (Mar. 10, 2022) at 452.

After the State concluded its closing argument, the court took a recess and the

jurors were excused. The court addressed Juror B's conduct, and the following colloquy

ensued:

> THE COURT: We're on the record without the jury. I wanted to
> address Juror [B] falling asleep. I don't know if you want to address it? He
> definitely was sleeping just now, and the juror next to him tried to wake him
> up. I don't know how long he was sleeping, but at least for a few minutes at
> this point.
> [PROSECUTOR]: Your Honor, there are at least three different
> instances where the juror next to him tried to nudge him with mixed results.
> I heard him snoring at least three different times both before and after Your
> Honor addressed the issue . . . when it became obvious to the room that he
> was snoring.
> I do realize that this came up during selection, and I did confer with
> [co-counsel and the case agent] and they didn't notice him sleeping [at that

3

time]. They saw him looking down, but they didn't think he was asleep, so we didn't support [defense counsel's] attempt to strike the juror at the time, but in [a] conversation that just happened off the record, numerous people have said that yeah, he's been sleeping consistently throughout the trial.

So having received that information and with what just happened, we ask to strike that juror and let one of the alternates take his place on the panel.

*Id.* at 461-62. The court then turned to defense counsel and asked if they had any objection:

[DEFENSE COUNSEL]: I mean, at this point, I actually don't agree, but I mean, he's one of the few minority members of the jury. So I would object to that at that point and do that with a *Batson*,[1] issue, as well.

THE COURT: But it was clear through this closing argument that he was asleep and he was snoring. If I could hear it, that's why I looked up, and when the juror tried to wake him up and he wasn't waking up.
. . . I don't know how much he missed. . . .
. . . I don't know how long he was sleeping, and that concerns the Court.
. . . I couldn't tell much until I heard the snore, and then it got silent, and that juror had trouble waking him up.

I think at this point, I could just . . . basically not excuse him, have him come back in and then when we say that we have two alternates and I have to excuse the alternates, we can just make him an alternate and say you're excused. [Juror B] and 14, you're our alternates.

*Id.* at 462-63.

The court then pondered aloud that instead of designating Juror B as an alternate,

Juror B could be pulled aside and excused immediately. The prosecutor responded that

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986).

they would prefer the option of Juror B becoming an alternate because "[t]hat seems to be cleaner." *Id.* at 463. The court responded, "I just don't want him to feel bad about it." *Id*. Defense counsel agreed with the court's chosen procedure, but nevertheless preserved the objection to Juror B's removal. After the conclusion of summation, Juror B was excused as an alternate along with juror 14.

The jury acquitted Mr. Howard of residential burglary and obstruction of a law enforcement officer, but convicted him of violation of a no-contact order. Mr. Howard was sentenced to time served. He now appeals.

## ANALYSIS

A trial court's decision to discharge an impaneled juror, or to replace a juror with an alternate, is reviewed for abuse of discretion. *State v. Depaz*, 165 Wn.2d 842, 852, 204 P.3d 217 (2009); *State v. Johnson*, 90 Wn. App. 54, 73, 950 P.2d 981 (1998). A trial court abuses its discretion if its decision is based on untenable grounds or for untenable reasons. *Depaz*, 165 Wn.2d at 852.

Trial court judges have a duty to discharge manifestly inattentive jurors and this duty extends through the end of trial. *See* RCW 2.36.110; CrR 6.5. A juror who sleeps during trial is not fit to serve. *See State v. Jorden*, 103 Wn. App. 221, 224-26, 230, 11 P.3d 866 (2000). A judge who allows a sleeping juror to deliberate on the parties' case

5

may imperil the right to a fair proceeding. *See State v. Hughes*, 106 Wn.2d 176, 204,

721 P.2d 902 (1986); *In re Pers. Restraint of Caldellis*, 187 Wn.2d 127, 146, 385 P.3d

135 (2016).

Mr. Howard does not dispute that Juror B was sleeping. He argues the trial court

should have conducted additional investigation before deciding to discharge Juror B.

We disagree.

Our case law recognizes that there is no particular format judges must follow in

dismissing a sleeping juror. *Jorden*, 103 Wn. App. at 229. Where the record shows a

juror has been sleeping, the court may reasonably decide to excuse the juror without

conducting an examination of the juror. *See id*. at 228-29. Questioning a juror about what

they missed while asleep would be a futile exercise. Little would be accomplished besides

unnecessary embarrassment. *See id.* at 228.

Mr. Howard also argues we should take guidance from GR 37 in analyzing the trial

court's decision to excuse Juror B. GR 37 modifies the three-part *Batson* framework used

to analyze alleged racial discrimination in the exercise of peremptory strikes. GR 37 states

that a trial court must deny a peremptory strike if "an objective observer[2] *could* view

---

[2] The rule defines an "objective observer" as someone who "is aware that implicit, institutional, and unconscious biases, in addition to purposeful discrimination, have resulted in the unfair exclusion of potential jurors in Washington State." GR 37(f).

race or ethnicity as a factor in the use of the peremptory challenge."[3] GR 37(e)

(emphasis added). GR 37(h) lists seven "reasons for peremptory challenges" that are

"presumptively invalid." GR 37(i) addresses a nonexhaustive list of additional reasons

advanced that "have historically been associated with improper discrimination in jury

selection," including "allegations that the prospective juror was sleeping [or] inattentive."

Mr. Howard points to this language and suggests that implicit bias may have permeated

the trial court's decision to discharge Juror B.

Mr. Howard's analogy to GR 37 fails. Even assuming GR 37's approach to

analyzing bias applies in this context, there is no showing of bias here.

GR 37(i) does not state that it is improper or presumptively improper to remove

a juror who is found to have slept during trial. The rule's text disapproves of

unsubstantiated "allegations" of misconduct such as sleeping. GR 37(i). An allegation

that a prospective juror has been sleeping can be difficult to prove after the fact and

may serve as pretext for bias. Thus, GR 37 requires this type of allegation to be verified

in a "timely manner" through "corroboration." *Id*. If the court verifies a juror has been

sleeping, GR 37 does not prohibit excusing the juror from service. *Cf. State v.*

---

[3] This standard does not require a finding of purposeful discrimination.
*See* GR 37(e).

7

*Tesfasilasye*, 200 Wn.2d 345, 359, 518 P.3d 193 (2022) (Jurors who have manifested unfitness to serve "simply should not be seated.").

Juror B's sleeping was corroborated. Defense counsel first noted Juror B had fallen asleep during voir dire. The judge then observed Juror B sleeping during summation. Juror B audibly snored. His behavior was noticed not only by the court but also by the prosecutor, at least one other juror, and others in the courtroom. It is not discriminatory to excuse a sleeping juror, regardless of the juror's race or ethnicity. The trial court did not abuse its discretion in designating Juror B as an alternate and then excusing him from service.

## CONCLUSION

The judgment of conviction is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Pennell, J.

WE CONCUR:

Siddoway, C.J.

Staab, J.

8