WIGGINS, J.
 

 ¶ 1 Adrian Sassen Van Elsloo appeals the midtrial dismissal of an impaneled juror who was excused because she had a minor connection to an important defense witness. The trial judge in this case erred by dismissing an impaneled juror after multiple days of trial testimony when there was no evidence that the juror was biased. We must now decide the remedy for an erroneous dismissal of an impaneled juror. We hold that the defendant is entitled to a new trial if there is any reasonable possibility that the erroneous dismissal stemmed from the juror's views on the merits of the case. However, if an impaneled juror's dismissal does not stem from his or her view of the merits of the case but is nonetheless erroneous, no new trial will be granted if the State establishes that the error was harmless. Here, there is a reasonable
 possibility that juror 12 was dismissed because of her views of the merits of the case. Sassen Van Elsloo is entitled to a new trial.
 

 ¶ 2 Sassen Van Elsloo also appeals the sufficiency of evidence supporting a firearm enhancement. We hold that the State presented sufficient evidence to support the enhancement.
 
 [1]
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 3 On September 7, 2012, while monitoring traffic, Bellingham police officer Lewis Leake saw a black Kia Sorrento make an illegal right turn. When Leake tried to stop the Kia, a chase ensued. When Leake overtook the Kia, he found it stopped in the middle of the road with the driver-side door open and the driver gone. A woman, Athena Aardema, was in the passenger seat and ultimately identified the driver as Adrian Sassen Van Elsloo.
 

 ¶ 4 The police permitted Aardema to leave the scene. While helping Aardema remove her belongings from the car, Officer Leake saw the handle of a shotgun. The police impounded the Kia and obtained a search warrant.
 

 ¶ 5 The search revealed a shotgun in the cargo hold. The search also revealed a digital scale, methamphetamine, 5 morphine pills, a pipe, a butane torch, 30 alprazolam pills, 67 clonazepam pills, seven small bags of heroin, a bill of sale with Sassen Van Elsloo's name, four prepaid cell phone cards, seven "burner" cell phones, gold jewelry, a bundle of 20 $1 bills, an iPad, the title for a 1990 Lincoln Town Car, a .38 revolver loaded with four bullets, a .22 pistol loaded with a magazine containing five bullets, six more rounds of ammunition, and a sock holding eight 12 gauge shotgun shells.
 

 ¶ 6 Three months later, Leake stopped a 1990 Lincoln Town Car driven by Sassen Van Elsloo. Sassen Van Elsloo was charged with nine felony counts relating to the earlier encounter. The State added firearm enhancements to five of the charges.
 

 ¶ 7 At trial, Sassen Van Elsloo's defense theory was misidentification, supported by an alibi witness named Sharon Burton. Burton testified that Sassen Van Elsloo was at her home on the day of the incident and therefore could not have been driving the Kia on that day.
 

 ¶ 8 Following Burton's testimony and cross-examination, juror 12 informed the bailiff that she recognized Burton from Burton's work with juror 12's nephew. Burton worked as an inpatient coordinator and a drug and alcohol counselor for the Lummi Nation. Juror 12 had met Burton when she went to the Lummi Business Council's "CARE" office, a chemical dependency treatment program for Lummi Nation tribal members, to obtain information that would help juror 12's nephew receive chemical dependency treatment services. Juror 12 had not recognized Burton's name on the juror questionnaire, but after seeing her testify, she recalled meeting Burton twice. Juror 12 said that she did not socialize with Burton, and that she would likely not remember Burton if she later saw her on the road.
 

 ¶ 9 The trial court allowed the parties to question juror 12 about her experience with Burton. The prosecutor pressed juror 12 about whether she had a "positive feeling" toward Burton:
 

 [PROSECUTOR]: ... So you just told us about asking Ms. Burton to help you with your nephew?
 

 JUROR NO. 12: Yes.
 

 [PROSECUTOR]: Was this able to help you?
 

 JUROR NO. 12: Well, she got us the help for our nephew to go into treatment. We got the help, they paid for the treatment program and the bus ticket for him to go there and back.
 

 [PROSECUTOR]: So did you have a positive experience with her?
 

 JUROR NO. 12: Well, I never did the intervention part of it because I left that up to my sister, his mother, and his siblings because he had four siblings, four sisters, so I kind of stepped back once my
 family kind of got back into trying to help him.
 

 [PROSECUTOR]: Right, l understand that.
 

 JUROR NO. 12: Do I believe she was a positive person for him? I can't say that because I think what was more positive for my nephew is when he finally went to treatment.
 

 [PROSECUTOR]: My question is not so much about the nephew, but do you feel like, do you feel like it was a positive experience for you to deal with her?
 

 JUROR NO. 12: I am not really sure....
 

 [PROSECUTOR]: Was there a negative experience at all?
 

 JUROR NO. 12: No, there was no good or bad, it was just all, you know, normal as it would be trying to just get the help I wanted for my family member.
 

 [PROSECUTOR]: Well ... it sounds to me like your nephew did get the help he needed?
 

 JUROR NO. 12: Yes.
 

 [PROSECUTOR]: You're pretty happy about that?
 

 JUROR NO. 12: Yes.
 

 [PROSECUTOR]: So that's kind of a positive thing or positive feeling that you're having about Ms. Burton; is that right?
 

 JUROR NO. 12: Well it's not Ms. Burton, it's my nephew I'm more positive with. She wasn't inter-reacting with my nephew while he was gone or when he came back. It's more what he did for himself.
 

 [PROSECUTOR]: I understand that, but it sounds like you kind of intellectualized it. I mean you're talking about, I mean you had a pretty good feeling, you must have a pretty good feeling about Ms. Burton and how she helped you; isn't that fair?
 

 JUROR NO. 12: I guess. It's not, I wouldn't call it from her. I'd call it from our own community for the help so that's what your tribe is for is to try to help the funds with our community people that need the assistance.
 

 [PROSECUTOR]: What do you think about me cross-examining her, is that something that concerned you?
 

 JUROR NO. 12: No, I just brought up that I think I knew her. I don't socialize with her or anything. I just kind of recognize her. I don't know her by name, or first name.
 

 [PROSECUTOR]: Okay.
 

 JUROR NO. 12: I can tell you that if I was to see her again out on the road I probably won't remember her again any way.
 

 5 Verbatim Report of Proceedings (VRP) (July 29, 2014) at 856-59. After questioning juror 12, the prosecutor could not point to any evidence of bias: "Now, whether I can absolutely put a finger on that she can't be fair or whether what she says is about, what she says about being fair or not I think that's kind of beside[ ] the point." 5 VRP (July 29, 2014) at 860.
 

 ¶ 10 The prosecutor sought dismissal nonetheless, claiming that Burton was an important witness for the defense and that "if the jurors believe Ms. Burton then it's a big deal" because "that means my case goes nowhere." 5 VRP (July 29, 2014) at 860.
 

 ¶ 11 Defense counsel objected to the motion, calling juror 12's interactions with Burton perfunctory and minimal, noting that juror 12 stated nothing about being unable to be fair, and pointing out that juror 12 was the only tribal member on the jury panel. The court acknowledged that it was a "close case" but dismissed juror 12 because "Ms. Burton is a critical witness and even though there is not a real strong relationship between the juror and the witness I think given the importance of the witness's role in the case it's appropriate for juror 12 to be excused...." 5 VRP (July 29, 2014) at 861. The jury convicted Sassen Van Elsloo on all counts.
 

 ANALYSIS
 

 ¶ 12 Sassen Van Elsloo appealed on two grounds: that juror 12 was improperly dismissed and that the State presented insufficient evidence to support the firearm enhancements.
 
 State v. Sassen Vanelsloo,
 
 No. 72553-0-I, slip op. at 3-6,
 
 2017 WL 480712
 
 (Wash. Ct. App. Feb. 6, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/725530.pdf. The Court of Appeals affirmed
 the trial court on both issues, and Sassen Van Elsloo appealed to this court. We reverse in part and affirm in part.
 

 I.
 
 Dismissal of an Impaneled Juror for Bias
 

 ¶ 13 Sassen Van Elsloo appeals the trial court's decision to dismiss juror 12 after she informed the court that she recognized one of the defense witnesses. The trial court abused its discretion when it dismissed juror 12.
 

 A. Standard of Review
 

 ¶ 14 We review a trial court's decision to discharge a juror for abuse of discretion.
 
 State v. Depaz,
 

 165 Wash.2d 842
 
 , 858,
 
 204 P.3d 217
 
 (2009). To determine if an impaneled juror has displayed actual bias warranting dismissal, the trial judge "will act as both an observer and decision maker."
 
 State v. Jorden,
 

 103 Wash. App. 221
 
 , 229,
 
 11 P.3d 866
 
 (2000). In doing so, the trial judge must weigh the credibility of the challenged juror.
 

 Id.
 

 " 'A [trial] judge with some experience in observing witnesses under oath becomes more or less experienced in character analysis, in drawing conclusions from the conduct of witnesses.' "
 
 State v. Noltie,
 

 116 Wash.2d 831
 
 , 839,
 
 809 P.2d 190
 
 (1991) (quoting 14 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE : TRIAL PRACTICE CIVIL § 203, at 332 (4th ed. 1986) ). Because a reviewing court " 'has not had the benefit of this evidence [we] recognize[ ] the advantageous position of the trial court.' "
 

 Id.
 

 (quoting 14 ORLAND & TEGLAND ,
 
 supra
 
 ). Thus, we must accord substantial deference to the trial court's decision of whether the juror is actually biased such that dismissal is appropriate.
 
 Jorden,
 

 103 Wash. App. at 229
 
 ,
 
 11 P.3d 866
 
 .
 

 ¶ 15 Nonetheless, the trial court must apply the correct legal standard and rest its decision on facts supported by the record. Atrial court abuses its discretion if its decision is "manifestly unreasonable or based on untenable grounds."
 
 Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.,
 

 122 Wash.2d 299
 
 , 339,
 
 858 P.2d 1054
 
 (1993). "A decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard."
 
 State v. Rohrich,
 

 149 Wash.2d 647
 
 , 654,
 
 71 P.3d 638
 
 (2003) (quoting
 
 State v. Rundquist,
 

 79 Wash. App. 786
 
 , 793,
 
 905 P.2d 922
 
 (1995) ). And, "[a] trial court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law."
 
 Fisons Corp.,
 

 122 Wash.2d at 339
 
 ,
 
 858 P.2d 1054
 
 .
 

 B. Standard of Proof
 

 ¶ 16 The Sixth Amendment to the United States Constitution and Washington Constitution article I, section 22 guarantee the right to a fair trial "by an impartial jury." U.S. CONST. amend. VI ; WASH. CONST. art. I, § 22. This right exists throughout the entire trial process and is safeguarded in part by statutes and rules that require the trial judge to dismiss biased jurors. RCW 4.44.170 ; RCW 2.36.110 ; CrR 6.5. The operation of these statutes and rules depends on whether the juror is a potential, impaneled, or deliberating juror.
 

 ¶ 17 "Potential jurors" are those who have been summoned for jury duty prior to the beginning of trial, have appeared, and have not been excused. RCW 4.44.120. This opinion refers to "impaneled jurors" as jurors who have been sworn and are seated on the panel while the trial is ongoing and testimony is being heard. We refer to "deliberating jurors" as those who were impaneled, listened to the trial testimony, and have begun deliberation of the case with the objective of reaching a verdict.
 

 ¶ 18 To resolve this case, we must first determine the standard of proof necessary for a trial judge to dismiss an
 
 impaneled
 
 juror for bias. To do so, we review prior decisions in which this court and the Court of Appeals have addressed the standard of proof necessary to dismiss a potential juror for bias. We hold that dismissal of an impaneled juror for bias requires the same findings as dismissal of a potential juror for bias-proof that the juror has formed a biased opinion and, as a result, cannot try the case impartially.
 

 1.
 
 Dismissal of a
 
 potential
 
 juror for actual bias requires proof that the juror cannot try the case impartially
 

 ¶ 19 The dismissal of a potential juror during voir dire is primarily governed by statute.
 

 Relevant here is RCW 4.44.170, which outlines three reasons potential jurors may be challenged for particular cause: implied bias, actual bias, and physical inability.
 

 ¶ 20 We are concerned here with "actual bias," defined by RCW 4.44.170 as "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging."
 

 ¶ 21 RCW 4.44.190 outlines the facts that a trial judge must find to dismiss a potential juror who was challenged for actual bias:
 

 [O]n the trial of such challenge, although it should appear that the juror challenged has formed or expressed an opinion upon what he or she may have heard or read, such opinion shall not of itself be sufficient to sustain the challenge, but
 
 the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially.
 

 (Emphasis added.) Actual bias must therefore be established by proof.
 
 Noltie,
 

 116 Wash.2d at 838
 
 ,
 
 809 P.2d 190
 
 . Equivocal answers alone are not sufficient to establish actual bias warranting dismissal of a potential juror.
 
 Id.
 
 at 839,
 
 809 P.2d 190
 
 . Rather, "the question is whether a juror with preconceived ideas can set them aside."
 

 Id.
 

 The trial court must be satisfied that the potential juror is unable to "try the issue impartially and without prejudice to the substantial rights of the party challenging" before dismissing the juror for actual bias. RCW 4.44.170(2). Furthermore, a mere possibility of bias is not sufficient to prove actual bias; rather, the record must demonstrate "that there was a probability of actual bias."
 
 Noltie,
 

 116 Wash.2d at 838-39
 
 ,
 
 809 P.2d 190
 
 .
 

 2.
 
 Dismissal of an impaneled juror for bias requires the same findings as dismissal of a potential juror for bias: proof that the juror cannot try the case impartially
 

 ¶ 22 We now turn to the issue present here: dismissal of an
 
 impaneled
 
 juror. Discharge and excusal of an impaneled juror is governed by RCW 2.36.110 and CrR 6.5. The statute imposes on the judge a duty to excuse any impaneled juror who, in the opinion of the judge, has demonstrated unfitness to continue on the jury "by reason of bias, prejudice, indifference, inattention or any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service." RCW 2.36.110. The rule requires the court to discharge any impaneled juror who "is found unable to perform the duties" and to appoint an alternate juror. CrR 6.5. Together, the statute and rule "place a continuous obligation on the trial court to excuse any juror who is unfit and unable to perform the duties of a juror."
 
 Jorden,
 

 103 Wash. App. at 227
 
 ,
 
 11 P.3d 866
 
 .
 

 ¶ 23 Relevant to this action, RCW 2.36.110 requires a judge to excuse an impaneled juror who has manifested unfitness by reason of bias. However, the statute does not elaborate on the definition of bias or the findings necessary to warrant the dismissal of a juror by reason of bias.
 

 ¶ 24 The Court of Appeals has applied to impaneled jurors the standard of actual bias required to dismiss a potential juror.
 
 See
 

 Hough v. Stockbridge
 
 ,
 
 152 Wash. App. 328
 
 ,
 
 216 P.3d 1077
 
 (2009). In
 
 Hough,
 
 the trial court refused to dismiss an impaneled juror for reason of bias.
 
 Id.
 
 at 340,
 
 216 P.3d 1077
 
 . To determine whether the impaneled juror manifested unfitness due to bias, the Court of Appeals applied the requirements of "actual bias" found in RCW 4.44.170 and defined in RCW 4.44.190, the statutes governing the for-cause dismissal of potential jurors. In doing so, the court made two inquiries: first, whether the juror had formed an opinion; and second, whether the juror was capable of disregarding that opinion and trying the case impartially.
 

 Id.
 

 ¶ 25 We now adopt this definition of actual bias and apply it to the dismissal of impaneled jurors for bias: when challenging a juror for bias, the challenging party must prove actual bias, regardless of whether the challenge occurs during voir dire or during the trial. Accordingly, to properly dismiss an impaneled juror for actual bias, the challenging
 party must prove (1) that the impaneled juror has formed or expressed a biased opinion and (2) that "from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially." RCW 4.44.190.
 

 C. Dismissal of Juror 12
 

 ¶ 26 Here, the trial court abused its discretion by dismissing juror 12 on untenable grounds and for an untenable reason.
 
 See
 

 Rohrich,
 

 149 Wash.2d at 654
 
 ,
 
 71 P.3d 638
 
 . The record indicates that juror 12 was dismissed because Burton was a critical witness for the defense, not because juror 12 displayed actual bias.
 

 ¶ 27 The importance of a witness alone is not a proper basis on which to dismiss an impaneled juror who had prior contact with that witness if the record does not indicate that the juror displayed actual bias. The governing statute does not contemplate the role, import, or significance of a particular witness as a basis for dismissal.
 
 See
 
 RCW 2.36.110. Furthermore, a juror's acquaintance with a witness is not, in itself, grounds for finding a juror unfit to serve.
 
 See
 

 State v. Tingdale,
 

 117 Wash.2d 595
 
 , 601,
 
 817 P.2d 850
 
 (1991) ;
 
 see also
 

 State v. Kloepper,
 

 179 Wash. App. 343
 
 ,
 
 317 P.3d 1088
 
 (2014). Rather, the challenging party must show that the juror formed an opinion because of his or her prior acquaintance with the witness and that the juror cannot disregard that opinion and try the case impartially. Without the requisite showing of the juror's bias and inability to be fair, the importance of a witness is irrelevant.
 

 ¶ 28 Here, the record contains no indication that juror 12 formed an opinion about Burton or that such opinion would prevent her from trying the case impartially. The record indicates that juror 12 was indifferent to Burton, not biased toward her. Juror 12 made it clear that her interactions with Burton were neither positive nor negative, despite being asked four times by the prosecutor whether she had positive feelings toward Burton.
 
 [2]
 
 Upon telling the bailiff that she recognized Burton, juror 12 indicated that "her knowledge of Ms. Burton would not affect her assessment of the testimony in any way." 5 VRP (July 29, 2014) at 853.
 

 ¶ 29 Defense counsel, the State, and the trial judge all agreed that juror 12 had not shown bias. Defense counsel objected to the dismissal and argued that juror 12 "stated nothing about how she couldn't be fair or that she had any feeling one way or another." 5 VRP (July 29, 2014) at 861. The trial court agreed that juror 12 hadn't expressed any bias, replying, "You know, that's true."
 

 Id.
 

 And by the prosecutor's own admission, he could not articulate or point to any bias or unfitness on the part of juror 12: "whether I can absolutely put a finger on that she can't be fair... [is] kind of beside[ ] the point." 5 VRP (July 29, 2014) at 860.
 

 ¶ 30 Further, the record does not support a finding that juror 12 was unable to try the case impartially. Regardless of juror 12's feelings about Burton, the statute states that a biased opinion alone is not sufficient to dismiss the juror for actual bias. RCW 4.44.190. The juror must be unable to try the case impartially due to the biased opinion.
 

 Id.
 

 ¶ 31 Here, neither the state nor the trial judge inquired whether juror 12 could put aside any prior opinions and judge the case
 fairly, and the record contains no facts supporting such a finding. Furthermore, while this court has emphasized the importance of deferring to the trial court's observations of demeanor, facial expressions, and nonverbal communications to assess a juror's fitness,
 
 see
 

 Noltie
 

 116 Wash.2d at 839
 
 ,
 
 809 P.2d 190
 
 , the trial court here made no mention on the record of juror 12's demeanor or other nonverbal communication.
 

 ¶ 32 The record indicates that the trial court dismissed juror 12 because of the importance of Burton as a witness for the defense, not because juror 12 was biased or unable to try the case fairly. Instead of arguing that juror 12 had expressed a biased opinion and would be unable to try the case impartially, the prosecutor argued that keeping juror 12 on the jury "just didn't feel fair" because "if the jurors believe Ms. Burton then it's a big deal"; "if they believe her that means my case goes nowhere." 5 VRP (July 29, 2014) at 860.
 

 ¶ 33 The trial judge conceded that juror 12 had not expressed any bias but dismissed juror 12 anyway, explaining that juror 12 was being dismissed because of the significance of Burton's role as a witness for the defense: "Counsel [for the State] points out correctly that Ms. Burton is a critical witness and even though there is not a real strong relationship between the juror and the witness[,] I think given the importance of the witness's role in the case it's appropriate for juror 12 to be excused ..." 5 VRP (July 29, 2014) at 860. The trial court then stated unequivocally, "I'm satisfied that State's request that the juror be disqualified is not for any discriminatory or inappropriate purpose, and
 
 given the importance of Ms. Burton's testimony and that's why I'm granting the State's motion
 
 ."
 
 [3]
 
 5 VRP (July 29, 2014) at 862 (emphasis added).
 

 ¶ 34 This was an abuse of discretion. The importance of Burton as a defense witness is an improper basis on which to dismiss juror 12, and no facts in the record indicate that juror 12 displayed actual bias. Therefore, the trial court abused its discretion when it dismissed juror 12.
 
 See
 

 Rohrich,
 

 149 Wash.2d at 654
 
 ,
 
 71 P.3d 638
 
 (a trial court abuses its discretion if its decision "rests on facts unsupported in the record or was reached by applying the wrong legal standard").
 

 II. Sassen Van Elsloo Is Entitled to a New Trial
 

 ¶ 35 All criminal defendants are constitutionally entitled to a unanimous jury verdict, WASH. CONST. art. I, § 21 ;
 
 State v. Petrich,
 

 101 Wash.2d 566
 
 , 569,
 
 683 P.2d 173
 
 (1984), reached by an impartial jury, U.S. CONST . amend. VI ; WASH. CONST. art. I, § 22.
 

 ¶ 36 We must now consider the appropriate remedy for the erroneous dismissal of an
 impaneled juror. The dissent maintains that this case is controlled by prior case law.
 
 [4]
 
 To the contrary, this case presents an issue of first impression for this court. We have case law that addresses the remedy for the wrongful dismissal of a
 
 potential
 
 juror and case law that addresses the remedy for the wrongful dismissal of a
 
 deliberating
 
 juror. However, we have never answered the question posed here: What is the remedy for an abuse of discretion in removing an
 
 impaneled
 
 juror who has heard evidence during the trial but is not yet deliberating?
 

 ¶ 37 We hold that the rights implicated by the erroneous dismissal of an impaneled juror lie between the rights implicated by the erroneous dismissal of a potential juror and the erroneous dismissal of a deliberating juror. Thus, to determine the appropriate remedy when an impaneled juror is erroneously dismissed, we analyze the framework already established for remedying the erroneous dismissals of potential and deliberating jurors. In doing so, we conclude that prejudice exists when the erroneous dismissal of an impaneled juror stems from concern over the juror's views of the merits of the evidence presented, thus warranting a new trial. However, when the erroneous dismissal of an impaneled juror does not stem from concern over the juror's views of the merits of the evidence presented, no new trial is warranted if the State establishes that the error was harmless.
 

 A. The Erroneous Dismissal of a Potential Juror
 

 ¶ 38 We look first at the remedy for the erroneous dismissal of a potential juror. If a trial judge erroneously dismisses a potential juror, the defendant is entitled to a new trial if he or she establishes that the erroneous dismissal was prejudicial.
 

 ¶ 39 During voir dire, any party may challenge a potential juror. RCW 4.44.130. Challenges may be peremptory or for cause.
 

 Id.
 

 A "peremptory challenge" is "an objection to a juror for which no reason need be given, but upon which the court shall exclude the juror." RCW 4.44.140. Each party has a limited number of peremptory challenges.
 
 See
 
 RCW 4.44.130 ; CrR 6.4(e). Challenges for cause, however, "are narrowly specified by statute and court rule," and to remove a juror for cause, "a party must be able to state on the record a legally sufficient reason for the challenge."
 
 State v. Vreen,
 

 99 Wash. App. 662
 
 , 668,
 
 994 P.2d 905
 
 (2000),
 
 aff'd,
 

 143 Wash.2d 923
 
 ,
 
 26 P.3d 236
 
 (2001). There is no limit to the number of potential jurors that each party may challenge for cause.
 
 See
 
 RCW 4.44.130.
 

 ¶ 40 When the trial court dismisses a potential juror, whether properly or improperly, the parties call and examine the next potential juror. He or she will either be preemptively challenged by a party, dismissed for cause, or determined suitable to sit on the jury. The parties and the court repeat this process until a full panel of suitable jurors is selected. In addition, the trial judge has discretion to impanel one or more alternate jurors. CrR 6.5. After a full panel of suitable jurors and alternates is selected, those jurors will be sworn, and the trial will commence.
 

 ¶ 41 During this process, the defendant's constitutional rights to an impartial jury or a unanimous verdict are not automatically violated when the trial court erroneously dismisses
 a potential juror. This is true because " '[n]o party can acquire a vested right to have a particular member of the panel sit upon the trial of his cause, until he has been accepted and sworn. It is enough that it appear that his cause has been tried by an impartial jury.' "
 
 State v. Phillips,
 

 65 Wash. 324
 
 , 326,
 
 118 P. 43
 
 (1911) (quoting 1 SEYMOUR D. THOMPSON, A TREATISE ON THE LAW OF TRIALS § 120 (1889) );
 
 see also
 

 State v. Larkin,
 

 130 Wash. 531
 
 , 533,
 
 228 P. 289
 
 (1924) ("[A] litigant has no right to have his case tried by any particular juror or jurors.");
 
 Creech v. City of Aberdeen,
 

 44 Wash. 72
 
 , 74,
 
 87 P. 44
 
 (1906) ("All that the appellant can claim is the right to have its case tried by an impartial jury.").
 

 ¶ 42 Furthermore, erroneously dismissing a potential juror does not cause a biased juror to be impaneled. Rather, after the trial court dismisses a potential juror, the process of jury selection will continue until an impartial jury has been selected. When a potential juror is dismissed, " 'it is to be presumed that the juror chosen in the place of the one rejected, is an impartial juror, such as the law requires.' "
 
 Phillips,
 

 65 Wash. at 327
 
 ,
 
 118 P. 43
 
 (quoting
 
 State v. Barnes,
 

 34 La. Ann. 395
 
 , 397 (1882) );
 
 see also
 

 State v. Persinger,
 

 62 Wash.2d 362
 
 , 366,
 
 382 P.2d 497
 
 (1963) ("The law presumes that each juror sworn in a case is impartial and above legal exception, otherwise he would have been challenged for 'cause.' ").
 

 ¶ 43 Therefore, if a fair and impartial jury was ultimately obtained, " 'notwithstanding the exclusion of the juror that the accused was anxious to have, ... surely we cannot conclude that the accused was so seriously injured by the ruling as to entitle him to a new trial.' "
 
 Phillips,
 

 65 Wash. at 327
 
 ,
 
 118 P. 43
 
 (quoting
 
 Barnes,
 

 34 La. Ann. at
 
 397 ). This is so because, assuming a suitable jury is impaneled, "the record of the voir dire shows affirmatively that the error was 'cured' by the selection of an impartial juror."
 
 Hinton v. United States,
 

 979 A.2d 663
 
 , 689 (D.C. 2009).
 

 ¶ 44 Defendants do not have the right to any particular juror, and the erroneous dismissal of a potential juror does not cause a biased juror to be impaneled. Thus, as we said in
 
 Phillips,
 
 if a juror is dismissed before being impaneled, the defendant is not entitled to a new trial, even if the juror " 'was rejected by the court upon insufficient grounds, unless through rejecting qualified persons, the necessity of accepting
 
 others
 
 not qualified has been purposely created.' "
 
 Phillips,
 

 65 Wash. at 326
 
 ,
 
 118 P. 43
 
 (quoting 1 THOMPSON ,
 
 supra
 
 ). In other words, the erroneous dismissal of a potential juror does not automatically violate a defendant's constitutional right to an impartial jury, and for this reason, a defendant must prove that the improper dismissal of a potential juror was prejudicial to be entitled to a new trial.
 
 See
 

 id.
 
 at 326-27,
 
 118 P. 43
 
 .
 

 B. The Erroneous Dismissal of a Deliberating Juror
 

 ¶ 45 In contrast to the dismissal of a potential juror, the erroneous dismissal of a
 
 deliberating
 
 juror requires reversal and remand, regardless of prejudice, because the dismissal implicates the rights to an impartial jury and a unanimous verdict.
 
 See
 

 State v. Elmore,
 

 155 Wash.2d 758
 
 ,
 
 123 P.3d 72
 
 (2005) ;
 
 State v. Ashcraft,
 

 71 Wash. App. 444
 
 , 463,
 
 859 P.2d 60
 
 (1993) (improperly dismissing a deliberating juror implicates "a defendant's constitutional right to a fair trial before an impartial jury and to a unanimous verdict").
 

 ¶ 46 This is so in part because jury deliberation is a crucial phase of trial during which the jurors discuss the case and arrive at a verdict. Jury deliberations must remain secret.
 
 Elmore,
 

 155 Wash.2d at 770
 
 ,
 
 123 P.3d 72
 
 ;
 
 United States v. Thomas,
 

 116 F.3d 606
 
 , 618 (2d Cir. 1997) ("The secrecy of deliberations is the cornerstone of the modern Anglo-American jury system."). And, jurors cannot discuss the case until the parties have presented evidence and testimony, the judge has instructed the jurors on the law, and they have been directed to begin deliberations.
 
 See
 
 RCW 4.44.280. Here, at the outset of trial, the judge instructed the jurors, "Until you are in the jury room with your fellow jurors for those deliberations you must not discuss the case with your fellow jurors or with anyone else." 1 VRP (July 22, 2014) at 9-10.
 

 ¶ 47 In
 
 Elmore,
 
 we addressed the standard of proof trial courts must apply when considering whether a deliberating juror is unfit to continue deliberating and the remedy that follows an erroneous dismissal.
 
 155 Wash.2d 758
 
 ,
 
 123 P.3d 72
 
 . In
 
 Elmore,
 
 members of a deliberating jury accused the sole holdout juror of refusing to follow the law.
 
 Id.
 
 at 763,
 
 123 P.3d 72
 
 . The judge dismissed the juror.
 
 Id.
 
 at 764,
 
 123 P.3d 72
 
 .
 

 ¶ 48 In determining the correct standard of proof and the resulting remedy applicable to the dismissal of a deliberating juror, we recognized the importance of balancing the defendant's right to a unanimous verdict and the right to an impartial jury with allowing the trial court's broad discretion.
 
 Id.
 
 at 777,
 
 123 P.3d 72
 
 . We further recognized that when evaluating a deliberating juror for refusal to follow the law, trial courts "must take special care not to delve into the substance of deliberations or the thought process of any particular juror."
 
 Id.
 
 at 771,
 
 123 P.3d 72
 
 .
 

 ¶ 49 We held that "[i]f it appears that a trial court is reconstituting a jury in order to reach a particular result, then the right to an impartial jury is sacrificed."
 
 Id.
 
 at 772,
 
 123 P.3d 72
 
 . Additionally, a dismissal that stems from a juror's views of the merits of the case violates the defendant's right to a unanimous jury verdict "because it 'would enable the government to obtain a conviction even though a member of the jury that began deliberations thought that the government had failed to prove its case.' "
 
 Id.
 
 at 771,
 
 123 P.3d 72
 
 (internal quotation marks omitted) (quoting
 
 Sanders v. Lamarque,
 

 357 F.3d 943
 
 , 945 (9th Cir. 2004) ). Thus, if a deliberating juror is accused of refusing to follow the law, "that juror cannot be dismissed when there is any reasonable possibility that his or her views stem from an evaluation of the sufficiency of the evidence."
 
 Id.
 
 at 778,
 
 123 P.3d 72
 
 .
 

 ¶ 50 Applying the "reasonable possibility" standard, we reversed because the record supported a reasonable possibility that the holdout juror's refusal to convict stemmed from an evaluation of the witnesses' credibility.
 
 Id.
 
 at 778-79,
 
 123 P.3d 72
 
 . As to the remedy, when the record shows a reasonable possibility that the request for the juror's dismissal stems from the juror's opinion of the merits of the case, dismissal of that juror violates the defendant's rights to a fair and impartial jury and a unanimous verdict, which necessitates a reversal and remand.
 
 Id.
 
 at 766, 771, 780-81,
 
 123 P.3d 72
 
 .
 

 ¶ 51 In
 
 State v. Berniard,
 
 the Court of Appeals applied the
 
 Elmore
 
 standard where a juror's extreme emotional distress stemmed, at least in part, from a difference in opinion with other jurors regarding the merits of the case.
 
 182 Wash. App. 106
 
 , 122,
 
 327 P.3d 1290
 
 (2014). The court recognized that the circumstance differed from
 
 Elmore,
 
 but the concern was similar: a juror was dismissed because of that juror's views on the merits of the case, violating the defendant's rights to a unanimous verdict and an impartial jury.
 
 Id.
 
 at 123,
 
 327 P.3d 1290
 
 . The court further held, "Denial of the right to an impartial trier of fact is a classic structural error, requiring reversal without a showing of prejudice. The remedy for improper dismissal of a deliberating juror is reversal and remand for a new trial."
 
 Id.
 
 at 123-24,
 
 327 P.3d 1290
 
 (citations omitted).
 

 ¶ 52 In
 
 Depaz,
 
 this court declined to extend the "reasonable possibility" standard to the dismissal of a holdout juror who committed misconduct during deliberations.
 
 165 Wash.2d 842
 
 ,
 
 204 P.3d 217
 
 . We nonetheless vacated the defendant's conviction without a finding of prejudice, holding that the trial court "abused its discretion by reaching a decision based on untenable reasons" because the record did not support a finding that the improper communication prejudicially influenced the juror.
 
 Id.
 
 at 862,
 
 204 P.3d 217
 
 .
 

 ¶ 53 Accordingly, these authorities establish that reversal is required and no showing of prejudice is necessary if the erroneous dismissal of a deliberating juror results in the violation of a constitutional right.
 

 ¶ 54 In contrast, the
 
 proper
 
 dismissal of a deliberating juror and the replacement of that juror with an alternate is not a constitutional violation if (1) the alternate juror was only temporarily excused and not dismissed at the beginning of deliberations,
 CrR 6.5, and (2) after replacement, the trial court instructed the jury to disregard all previous deliberations and begin new deliberations.
 
 See
 

 Ashcraft,
 

 71 Wash. App. at 464
 
 ,
 
 859 P.2d 60
 
 ("[l]t was reversible error of constitutional magnitude to fail to instruct the reconstituted jury on the record that it must disregard all prior deliberations and begin deliberations anew." (emphasis omitted) );
 
 see also
 

 State v. Fisch,
 

 22 Wash. App. 381
 
 , 383,
 
 588 P.2d 1389
 
 (1979) (concluding that the 12 jurors "must reach their consensus through deliberations which are the common experience of all of them").
 

 ¶ 55 In sum, when a deliberating juror is erroneously dismissed, a new trial is warranted if there is any reasonable possibility that the dismissal arose because of that juror's view of the merits of the case. Similarly, a new trial is warranted when a deliberating juror is dismissed on grounds that are not supported by the record. But, when a deliberating juror is dismissed on proper and supported grounds, the replacement of that juror with an alternate is not a constitutional violation warranting a new trial, as long as the trial judge takes the appropriate steps to ensure the defendant's rights to an impartial and unanimous jury are not violated.
 

 C. The Erroneous Dismissal of an Impaneled Juror
 

 ¶ 56 We must now determine the appropriate remedy for the erroneous dismissal of an impaneled juror. The erroneous dismissal of an impaneled juror shares constitutional implications with the erroneous dismissal of both potential jurors and deliberating jurors.
 

 ¶ 57 On one hand, "[i]f it appears that a trial court is reconstituting a jury in order to reach a particular result," then a defendant's constitutional rights to a unanimous verdict by an impartial jury are implicated.
 
 See
 

 Elmore,
 

 155 Wash.2d at 772
 
 ,
 
 123 P.3d 72
 
 . This is true regardless of whether the jury is impaneled or deliberating: once the jury has begun to hear testimony and consider evidence, individual jurors may no longer be viewed as fungible.
 
 See
 

 Phillips,
 

 65 Wash. at 326
 
 ,
 
 118 P. 43
 
 (acknowledging the distinction between a potential juror and an impaneled juror: "[n]o party can acquire a vested right to have a particular member of the panel sit upon the trial of his cause,
 
 until he has been accepted and sworn
 
 " (emphasis added) (quoting 1 THOMPSON ,
 
 supra
 
 ) ). An impaneled juror will carry his or her consideration, evaluation, and views of the evidence into deliberations leading to a verdict. Thus, dismissing a juror
 
 because
 
 of those views of the merits of the case jeopardizes our constitutional guaranty that a verdict is unanimous.
 
 [5]
 
 WASH. CONST. art. I, § 21. Replacement with an alternate does not cure this: "[i]t is no answer to say that the 12 jurors who ultimately comprised [the] jury were unobjectionable. Reasonable and dispassionate minds may look at the same evidence and reach a different result."
 
 State v. Irby,
 

 170 Wash.2d 874
 
 , 886-87,
 
 246 P.3d 796
 
 (2011).
 

 ¶ 58 On the other hand, if an impaneled juror's erroneous dismissal does not stem from the juror's evaluation of the evidence, and a suitable alternate replaces the dismissed juror, the circumstances resemble the dismissal of a potential juror, in which the error is cured by the replacement with an impartial juror. Just as the dismissal of a potential juror during voir dire does not
 
 cause
 
 a biased juror to be impaneled, replacing an impaneled juror with a suitable alternate does not place a biased juror onto the panel. To the contrary, an alternate juror is presumably unbiased, having been approved and sworn by the trial judge.
 
 See
 

 Persinger,
 

 62 Wash.2d at 366
 
 ,
 
 382 P.2d 497
 
 ("The law presumes that every juror sworn in the case is impartial and above legal exception, otherwise he would have been challenged for 'cause.' ").
 

 ¶ 59 For this reason, the erroneous dismissal of a juror and replacement with an alternate does not automatically violate a defendant's constitutional rights, as long as the dismissal does not stem from the juror's views of the merits of the case.
 
 See
 

 Gentry,
 
 125 Wash.2d at 616,
 
 888 P.2d 1105
 
 (holding that the right to an impartial jury was not violated by the replacement of an impaneled juror with an alternate when the defendant participated in and accepted the selection of three alternate jurors before trial);
 
 c.f.
 

 Tingdale,
 

 117 Wash.2d at 602
 
 ,
 
 817 P.2d 850
 
 (holding that erroneously dismissing a potential juror is not grounds for exception "unless 'through rejecting qualified persons, the necessity of accepting others not qualified has been purposely created' " (internal quotation marks omitted) (quoting
 
 Phillips,
 

 65 Wash. at 326
 
 ,
 
 118 P. 43
 
 ) ). Furthermore, although the rule for dismissing and replacing an impaneled juror acts as a safeguard for constitutional rights, failure to comply with the rule does not necessarily violate the constitution.
 
 See
 

 Gentry,
 
 125 Wash.2d at 616,
 
 888 P.2d 1105
 
 (noting that a challenge to the trial court's compliance with CrR 6.5 involves "compliance with a procedural rule rather than a constitutional issue").
 

 ¶ 60 Keeping in mind the legal framework governing the dismissal of potential and deliberating jurors and the distinct interests and constitutional rights at play when an impaneled juror is dismissed, we now hold the following. The defendant's constitutional right to a unanimous verdict is violated and a new trial is warranted if there exists a reasonable possibility that the trial judge dismissed an impaneled juror because of that juror's "views of the sufficiency of the evidence."
 
 See
 

 Elmore,
 

 155 Wash.2d at 761
 
 ,
 
 123 P.3d 72
 
 . However, if an impaneled juror's dismissal does not stem from his or her view of the merits of the case but is nonetheless erroneous, a new trial is not warranted when the State establishes that the wrongful dismissal resulted in no harm to the defendant.
 
 Hinton,
 

 979 A.2d at
 
 689-90 ;
 
 United States v. Donato,
 

 321 U.S. App. D.C. 287
 
 ,
 
 99 F.3d 426
 
 , 430 (1996) ;
 
 Pickering v. People,
 

 66 V.I. 276
 
 , 290-91 (2017) ;
 
 Washington v. State,
 

 955 So.2d 1165
 
 , 1173 (Fla. Dist. Ct. App. 2007).
 
 [6]
 

 ¶ 61 To show that an erroneous dismissal of an impaneled juror was harmless, the State must present evidence that allows the appellate court "to 'say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' "
 
 Hinton,
 

 979 A.2d at 691
 
 (quoting
 
 Kotteakos v. United States,
 

 328 U.S. 750
 
 , 765,
 
 66 S.Ct. 1239
 
 ,
 
 90 L.Ed. 1557
 
 (1946) ). If the appellate court is in "virtual equipoise" as to the harmlessness of the error, the error should be treated as if it were not harmless.
 

 Id.
 

 While it may be difficult for the government to show the absence of prejudice, it is not impossible: "we would suppose that if the government's case is strong and there is no reason apparent in the record to think the erroneously removed juror would have dissented, a reviewing court could be satisfied that the juror substitution had no substantial influence on the outcome."
 
 Id.
 
 at 691-92.
 

 D. New Trial
 

 ¶ 62 Here, the trial court abused its discretion by improperly dismissing juror 12, and there is a reasonable possibility that the improper dismissal was based on juror 12's views of the merits of the case. Therefore, Sassen Van Elsloo is entitled to a new trial.
 

 ¶ 63 Juror 12 repeatedly denied that she had positive feelings toward Burton because of their prior encounters, and the State failed to articulate any evidence that juror 12 was
 biased or unfit to serve as a juror. Rather, the State argued that juror 12 should be dismissed because Burton was an important witness for the defense, that it "just didn't feel fair," and that "if the jurors believe Ms. Burton then it's a big deal." 5 VRP (July 29, 2014) at 860.
 

 ¶ 64 The trial judge dismissed juror 12 not because she was biased but because of the importance of Burton's testimony to the success of the defendant's case. The trial judge stated, "Counsel [for the State] points out correctly that Ms. Burton is a critical witness and even though there is not a real strong relationship between the juror and the witness[,] I think given the importance of the witness's role in the case it's appropriate for Juror 12 to be excused...." 5 VRP (July 29, 2014) at 861. The trial court then stated unequivocally, "I'm satisfied that State's request that the juror be disqualified is not for any discriminatory or inappropriate purpose, and
 
 given the importance of Ms. Burton's testimony and that's why I'm granting the State's motion.
 
 "
 
 [7]
 
 5 VRP (July 29, 2014) at 862 (emphasis added).
 

 ¶ 65 There is at the least a very real possibility that the judge dismissed juror 12 because of her evaluation of the testimony and her views of the merits of the case. Indeed, it is nearly impossible to draw any other conclusion when a juror was dismissed because of an entirely unsupported concern that the juror will believe testimony of a witness whose testimony, if believed by the jurors, "means [the State's] case goes nowhere." 5 VRP (July 29, 2014) at 860. It would be illogical to conclude otherwise-there is no indication that juror 12 was biased for or against Burton and defendant Sassen Van Elsloo; the only possible reason to excuse juror 12 was for her views on the merits of the case.
 

 ¶ 66 Therefore, the trial court abused its discretion by dismissing juror 12 without finding actual bias and violated Sassen Van Elsloo's right to a unanimous verdict when it dismissed juror 12 because of her views on the merits of the case. We reverse the Court of Appeals and remand for a new trial.
 

 III. Firearm Enhancements
 

 ¶ 67 We now turn to the second issue in this case: whether there was sufficient evidence to support the firearm enhancements with which the State charged Sassen Van Elsloo.
 
 See
 
 RCW 9.94A.825, .533(3). Though we need not address this question in light of our decision to reverse and remand for a new trial, we nonetheless do so for guidance as the issue may arise on remand. RAP 2.4. We hold that there was sufficient evidence and affirm the imposition of the enhancements.
 

 A. Standard of Review
 

 ¶ 68 Whether a person is armed is a mixed question of law and fact.
 
 State v. Schelin,
 

 147 Wash.2d 562
 
 , 565-66,
 
 55 P.3d 632
 
 (2002) (plurality opinion). This court determines whether the facts are sufficient as a matter of law to prove that the defendant was armed by de novo review.
 
 Id.
 
 at 566,
 
 55 P.3d 632
 
 . Determining whether a defendant is armed for the purpose of a deadly weapon enhancement is a fact-specific decision.
 
 State v. Neff,
 

 163 Wash.2d 453
 
 , 462,
 
 181 P.3d 819
 
 (2008) (plurality opinion). To determine the sufficiency of evidence, we must establish "whether any rational trier of fact could have found the elements of the charged crime beyond a reasonable doubt."
 
 State v. Brown,
 

 162 Wash.2d 422
 
 , 428,
 
 173 P.3d 245
 
 (2007). We must view the evidence in the light most favorable to the State and draw all inferences in its favor.
 

 Id.
 

 B. The State Presented Sufficient Evidence To Support Firearm Enhancements on Sassen Van Elsloo's Drug Charges
 

 ¶ 69 To establish that a defendant was armed for the purpose of a firearm
 enhancement, the State must prove (1) that a firearm was easily accessible and readily available for offensive or defensive purposes during the commission of the crime and (2) that a nexus exists among the defendant, the weapon, and the crime.
 
 State v. Eckenrode,
 

 159 Wash.2d 488
 
 , 493,
 
 150 P.3d 1116
 
 (2007) (plurality opinion).
 

 ¶ 70 The presence, close proximity, or constructive possession of a weapon at the scene of a crime is, by itself, insufficient to show that the defendant was armed for the purpose of a firearm enhancement.
 
 State v. Barnes,
 

 153 Wash.2d 378
 
 , 383,
 
 103 P.3d 1219
 
 (2005) ;
 
 Schelin,
 

 147 Wash.2d at 563-64
 
 ,
 
 55 P.3d 632
 
 ;
 
 State v. Gurske,
 

 155 Wash.2d 134
 
 ,138,
 
 118 P.3d 333
 
 (2005). Rather, for a person to be armed during the commission of a crime, the weapon must be easily accessible and readily available for use for either offensive or defensive purposes.
 
 Barnes,
 

 153 Wash.2d at 383
 
 ,
 
 103 P.3d 1219
 
 ;
 
 Gurske,
 

 155 Wash.2d at 137
 
 ,
 
 118 P.3d 333
 
 ;
 
 State v. Murillo Valdobinos,
 

 122 Wash.2d 270
 
 , 282,
 
 858 P.2d 199
 
 (1993). A defendant "does not have to be armed at the moment of arrest to be armed for purposes of the firearms enhancement," and the State "need not establish with mathematical precision the specific time and place that a weapon was readily available and easily accessible, so long as it was at the time of the crime."
 
 State v. O'Neal,
 

 159 Wash.2d 500
 
 , 504-05,
 
 150 P.3d 1121
 
 (2007).
 

 ¶ 71 In addition to proving that a weapon was readily available and easily accessible at the time of the crime, the State must offer sufficient evidence that there existed a nexus between Sassen Van Elsloo, the gun, and the commission of the drug crimes. The requirement of a nexus between the defendant, the weapon, and the crime "serves to place 'parameters ... on the determination of when a defendant is armed, especially in the instance of a continuing crime such as constructive possession' of drugs."
 
 Gurske,
 

 155 Wash.2d at 140
 
 ,
 
 118 P.3d 333
 
 (alteration in original) (quoting
 
 Schelin,
 

 147 Wash.2d at 568
 
 ,
 
 55 P.3d 632
 
 ). Without this nexus, there is a risk that a defendant will be punished under the firearm enhancement for having a gun unrelated to the crime.
 

 Id.
 

 To determine whether there was a nexus between the defendant, the weapon, and the crime, the court looks at the nature of the crime, the type of weapon, and the circumstances under which it was found.
 
 Schelin,
 

 147 Wash.2d at 570
 
 ,
 
 55 P.3d 632
 
 .
 

 ¶ 72 Here, Sassen Van Elsloo argues that the shotgun was too far away from him to qualify as easily accessible and readily available because Sassen Van Elsloo would have had to exit the car or move to the back seat to reach the shotgun. Sassen Van Elsloo also argues that there was insufficient evidence to support a nexus between him, the drugs, and the crime because "[t]here was also no evidence that Sassen-Vanelsloo ever had, or indicated an intent to use, the shotgun to protect the drugs." Suppl. Br. of Pet'r at 20. In making this argument, Sassen Van Elsloo relies on this court's decision in
 
 Gurske,
 
 where we found insufficient evidence to support a firearm enhancement.
 
 155 Wash.2d 134
 
 ,
 
 118 P.3d 333
 
 .
 

 ¶ 73 In
 
 Gurske,
 
 the police found a zipped-up backpack in the back seat of the defendant's truck containing an unloaded pistol, a loaded magazine, and drugs. We determined that the gun was not easily accessible and readily available at the time of the crime because the backpack containing the gun was zipped and could not be removed by the defendant unless he exited the truck.
 
 [8]
 

 Id.
 
 at 143-44,
 
 118 P.3d 333
 
 .
 

 ¶ 74 Additionally, when the crime is of a continuing nature, such as a drug operation, a nexus exists if the firearm is "there to be used" in the commission of the crime.
 
 Id.
 
 at 138,
 
 118 P.3d 333
 
 . Applying that standard in
 
 Gurske,
 
 we found that no nexus existed between the weapon and the crime because the State had presented no evidence that Gurske had used or had access to the weapon during the commission of a crime, such as when he acquired or was in possession of the methamphetamine.
 
 Id.
 
 at 143,
 
 118 P.3d 333
 
 .
 

 ¶ 75 Sassen Van Elsloo argues that his case cannot be distinguished from
 
 Gurske.
 
 However, as the Court of Appeals pointed out, the present case is more closely aligned with those cases in which we found that reasonable juries could infer that guns kept at the site of ongoing drug crimes were easily accessible during and had a sufficient nexus to the commission of the crime.
 

 ¶ 76 For example, in
 
 Eckenrode,
 
 we found sufficient evidence to support a firearm enhancement.
 
 159 Wash.2d 488
 
 ,
 
 150 P.3d 1116
 
 . There, Eckenrode called the police to report that an intruder was in his house and alerted the dispatcher that he was armed and ready to shoot the intruder.
 
 Id.
 
 at 491,
 
 150 P.3d 1116
 
 . When the police responded, Eckenrode was sitting in his front yard in a lawn chair.
 

 Id.
 

 The police swept the house for intruders and instead found methamphetamine, dried marijuana, a loaded rifle, an unloaded pistol, and the aroma of marijuana.
 
 Id.
 
 at 491-92,
 
 150 P.3d 1116
 
 . After obtaining a warrant, the police found a marijuana grow and records of marijuana sales.
 
 Id.
 
 at 492,
 
 150 P.3d 1116
 
 . Eckenrode was arrested outside his home, unarmed. He was convicted of the unlawful manufacture and possession of marijuana, and the jury found that he was armed on both counts.
 

 Id.
 

 ¶ 77 There was sufficient evidence to support the firearm enhancements, even though Eckenrode was unarmed at the time of arrest.
 
 Id.
 
 at 494,
 
 150 P.3d 1116
 
 . The gun was easily accessible and readily available: Eckenrode himself told the 911 operator that he had a loaded gun in his hand and was prepared to shoot the intruder.
 

 Id.
 

 We also found a sufficient nexus among Eckenrode, the weapon, and the drug crimes, holding that a "jury could readily have found that the weapons were there to protect the criminal enterprise."
 

 Id.
 

 ¶ 78 We distinguished
 
 Eckenrode
 
 from
 
 Gurske
 
 on the grounds that the State in
 
 Gurske
 
 presented no evidence that the weapon "was readily accessible at any relevant time or that there was any connection between the weapon and the crime,"
 
 id.
 
 at 495,
 
 150 P.3d 1116
 
 , while in
 
 Eckenrode,
 
 the State presented evidence that the weapons were there to protect the marijuana grow,
 
 id.
 
 at 494,
 
 150 P.3d 1116
 
 .
 
 [9]
 

 ¶ 79 Here, there is sufficient evidence to conclude that the gun in Sassen Van Elsloo's car was easily accessible and readily available during the commission of the drug crimes and that a nexus existed between Sassen Van Elsloo, the gun, and the crime.
 

 ¶ 80 The State presented sufficient evidence that Sassen Van Elsloo was engaged in possessing and selling illegal drugs from the Kia as part of an ongoing criminal enterprise: Aardema testified that she and Sassen Van Elsloo were selling drugs; the car contained a locked bank bag holding controlled substances separated and packaged in a style consistent with personal use and sales; numerous burner cell phones, glassine envelopes, small "baggies," and a digital scale of the style often used in the sale of controlled substances were found in the backpack in the car; and a locked safe containing a roll of $1 bills, a revolver, and a small semiautomatic handgun was found in the back of the Kia,
 the key to which was found in the passenger console.
 

 ¶ 81 Additionally, sufficient evidence connected Sassen Van Elsloo to the drug operation being run out of the Kia. The backpack contained several receipts with Sassen Van Elsloo's name; his DNA was found on the shotgun; and Aardema testified that Sassen Van Elsloo had been driving on the date of the incident, that the safe belonged to Sassen Van Elsloo, and that he took it wherever he went.
 

 ¶ 82 Finally, there was sufficient evidence to find a nexus between the shotgun and Sassen Van Elsloo's ongoing possession and distribution of the drugs. First, the shotgun was found less than a foot from the backpack, which contained the drugs and was the sole source of the drug charges. Second, the gun was placed in the car with its grip facing at an angle toward the passenger compartment of the car, making it easy for someone entering the car to quickly grab the gun. Third, the gun had a shell in the magazine that could have been readily chambered and fired at another person. And fourth, the shotgun was kept out of the locked safe, unlike the revolver and semiautomatic handgun, which were not the subjects of the firearm enhancements. This is sufficient to support a conclusion that the firearm was "there to be used" in the commission of the drug crimes.
 
 Gurske,
 
 155 Wash.2d at 138,
 
 118 P.3d 333
 
 .
 

 ¶ 83 Taking the evidence in the light most favorable to the State, there is sufficient evidence to demonstrate that the shotgun was easily accessible and readily available, and that there was a nexus among Sassen Van Elsloo, the shotgun, and the commission of the drug crimes.
 

 CONCLUSION
 

 ¶ 84 We reverse the Court of Appeals in part and affirm in part. First, the trial court abused its discretion when it dismissed juror 12. Second, Sassen Van Elsloo is entitled to a new trial because there is a reasonable possibility that juror 12 was dismissed because of her views of the merits of the case. Third, the State presented sufficient evidence that Sassen Van Elsloo was armed as necessary to uphold a firearm enhancement.
 

 ¶ 85 We remand for further proceedings consistent with this decision.
 

 Though we are vacating Sassen Van Elsloo's trial, we recognize that this issue may arise on remand, and so we are addressing it for guidance. RAP 2.4.
 

 When first asked by the prosecutor whether she had a positive experience with Burton, juror 12 explained her limited involvement with Burton, and she could not even say that Burton played a positive role for her nephew. When the prosecutor asked a second time whether juror 12 had a positive experience with Burton, juror 12 said that she could not say it was a positive experience. When the prosecutor then asked whether juror 12's experience with Burton was negative, juror 12 again reiterated her indifference to Burton, saying, "No, there was no good or bad." 5 VRP (July 29, 2014) at 857. The third time asking whether juror 12 had a positive experience with Burton, the prosecutor switched to leading questions, this time telling juror 12 that juror 12 had a positive feeling about Burton. To this, juror 12 maintained that "it's not Ms. Burton, it's my nephew I'm more positive with." The fourth time the prosecutor asked juror 12 whether she had a positive experience with Burton, the prosecutor did so by stating, "[Y]ou must have a pretty good feeling about Ms. Burton and how she helped you; isn't that fair?" 5 VRP (July 29, 2014) at 858-59. To this, juror 12 finally replied, "I guess," before clarifying that the good feeling she had was not from Burton, but "from our own community for the help." 5 VRP (July 29, 2014)" at 859.
 

 In objecting to juror 12's dismissal, defense counsel mentioned that juror 12 was the only person on the jury who was a tribal member of the Lummi Nation. However, on appeal, Sassen Van Elsloo did not challenge his convictions on
 
 Batson
 
 grounds.
 
 Batson v. Kentucky,
 

 476 U.S. 79
 
 ,
 
 106 S.Ct. 1712
 
 ,
 
 90 L.Ed.2d 69
 
 (1986). The issue of juror dismissal based on racial bias grounds was not briefed by either party, nor was it discussed during oral argument. Therefore, the issue is not properly before this court.
 
 State v. Johnson,
 

 119 Wash.2d 167
 
 , 170,
 
 829 P.2d 1082
 
 (1992) ("While appellate courts may accept review of constitutional issues not raised in the trial court pursuant to RAP 2.5(a)(3), the defendant must raise the issue on appeal in accordance with the Rules of Appellate Procedure. Issues not so raised, even constitutional issues, are not properly before this court.").
 

 Furthermore, the record is inadequate to analyze this case on the basis of a
 
 Batson
 
 violation.
 
 Batson,
 

 476 U.S. 79
 
 ,
 
 106 S.Ct. 1712
 
 . Under
 
 Batson,
 
 to establish that a juror was dismissed on racial grounds, the defendant must first establish a prima facie case that " 'gives rise to an inference of discriminatory purpose.' "
 
 City of Seattle v. Erickson,
 

 188 Wash.2d 721
 
 , 726,
 
 398 P.3d 1124
 
 (2017) (quoting
 
 Batson,
 

 476 U.S. at 94
 
 ,
 
 106 S.Ct. 1712
 
 ). If a prima facie case is successfully made, "the burden shifts to the prosecutor to provide an adequate, race-neutral justification for the strike."
 
 Id.
 
 at 727,
 
 398 P.3d 1124
 
 . If the prosecutor provides a race-neutral explanation, "the court must weigh all relevant circumstances and decide if the strike was motivated by racial animus."
 

 Id.
 

 Here, when objecting to juror 12's dismissal, defense counsel stated, "I guess I should note my objection is also just my concern that an aspect of this is a tribal member and I think the only tribal member that is on our panel." 5 VRP (July 29, 2014) at 861. Despite this objection, the defendant did not ask for a ruling under
 
 Batson
 
 and its Washington progeny, nor did the defendant establish a discriminatory purpose requiring a response from the State. Accordingly, the record is inadequate to analyze this case as presenting a
 
 Batson
 
 issue.
 

 The dissent maintains that precedent controls this case and that our holding unnecessarily departs from case law. The dissent points to
 
 State v. Gentry
 
 and
 
 State v. Williamson
 
 to contend that a defendant has no right to a particular juror and that a defendant is entitled to a new trial only upon a showing that the erroneous dismissal of an impaneled juror resulted in prejudice. Dissent at 833-34 (quoting
 
 State v. Gentry,
 

 125 Wash.2d 570
 
 , 616,
 
 888 P.2d 1105
 
 (1995) and citing
 
 State v. Williamson,
 

 100 Wash. App 248
 
 , 253,
 
 996 P.2d 1097
 
 (2000) ). Neither case addresses the remedy for an abuse of discretion resulting in the wrongful dismissal of an impaneled juror.
 
 See
 

 Gentry,
 

 125 Wash.2d at 616
 
 ,
 
 888 P.2d 1105
 
 (holding that defendant's challenge to the trial court's replacement of a regular juror with an alternate "may not be raised for the first time on appeal" where defendant agreed to the panel of deliberating jurors and, "in fact, participated in the error that resulted in replacing a regular juror with an alternate.");
 
 see also
 

 Williamson,
 

 100 Wash. App at 250
 
 ,
 
 996 P.2d 1097
 
 (holding that "the trial court did not abuse its discretion by allowing the late peremptory challenge"). Thus, neither case is controlling here, and it is appropriate to address the issue now.
 

 The dissent states that the lead opinion "appears to equate 'bias' with the juror's 'views of the merits of the case.' " Dissent at 834. In fact, a juror's bias is crucially distinct from a juror's views of the merits of the case. "Bias" is an inability to be fair and partial because of a preconceived opinion. RCW 4.44.190. In contrast, a juror's "views of the merits of the case" are the way a seated or deliberating juror has understood, interpreted, or weighed the evidence and testimony that has been presented in the trial. To dismiss a juror for bias, whether seated or impaneled, is proper. To dismiss a juror because he or she assessed evidence in any particular way, whether impaneled or deliberating, is not.
 

 The dissent maintains that our holding departs from precedent and overturns
 
 Gentry,
 
 which noted that a defendant has no right to be tried by a particular juror. Dissent at 836-37. The holding here does neither. We recognize that a defendant cannot argue generally that he or she has an independent right to a particular juror. However, if we carry the dissent's persistent reliance on
 
 Gentry
 
 to its logical conclusion, we would never reverse for an error in the acceptance or removal of jurors during a trial. The trial court could make any ruling excusing a juror, no matter how erroneous, and there would be no recourse. While a defendant has no independent right to a particular juror, it cannot be said that the absence of such a right insulates the court from failing to protect a defendant's constitutional rights or that the substitution by an alternate juror automatically cures any constitutional violation.
 

 In objecting to juror 12's dismissal, defense counsel also stated concern that juror 12 was the only person on the jury who was a tribal member of the Lummi Nation. The trial court noted that it shared the concern but dismissed juror 12 nonetheless. We have previously noted that we did not find a
 
 Batson
 
 challenge present here. However, the fact that juror 12 and Burton shared a connection through the Lummi Nation may support our conclusion that juror 12 was dismissed because of her views of the merits of the case. We need not reach this issue to resolve the case, however, and because it was not briefed by either party, we choose not to.
 

 For other cases in which there was insufficient evidence to show that a weapon was easily accessible and readily available, see
 
 State v. Johnson,
 

 94 Wash. App. 882
 
 ,
 
 974 P.2d 855
 
 (1999), and
 
 State v. Ague-Masters,
 

 138 Wash. App. 86
 
 ,
 
 156 P.3d 265
 
 (2007).
 

 See also
 

 O'Neal,
 

 159 Wash.2d 500
 
 ,
 
 150 P.3d 1121
 
 (holding that there was sufficient evidence to support a firearm enhancement, even though defendants were not armed at the time of arrest, where police found substantial evidence that defendants were using their home as a drug manufacturing site, including over 20 guns, body armor, a police scanner, and night vision goggles; and a jury could reasonably infer that the guns were readily available to protect the drug operation);
 
 Neff,
 

 163 Wash.2d at 465
 
 ,
 
 181 P.3d 819
 
 (holding that there was sufficient evidence to support a firearm enhancement where the defendant was manufacturing methamphetamine in his garage and the police found three loaded pistols nearby, supporting the finding that the defendant had manufactured methamphetamine with guns at hand);
 
 State v. Simonson,
 

 91 Wash. App. 874
 
 , 883,
 
 960 P.2d 955
 
 (1998) (holding that it was reasonable for the jury to infer that four loaded guns and three unloaded guns kept on the premises of a drug manufacturing site were there for the purpose of defending the site from attack);
 
 State v. Easterlin,
 

 159 Wash.2d 203
 
 , 207, 210,
 
 149 P.3d 366
 
 (2006) (holding that sufficient evidence existed to uphold a firearm enhancement when the defendant was found asleep in a car with a gun on his lap and cocaine in his sock, noting, "[s]o long as the facts and circumstances support an inference of a connection between the weapon, the crime, and the defendant, sufficient evidence exists" to support a finding that the defendant was armed).